THE STATE OF OHIO, APPELLEE, *v.* CLAYBROOK, APPELLANT.*

[Cite as State v. Claybrook (1978), 57 Ohio App. 2d 131.]

(No. 77AP-771—Decided February 28, 1978.)

*Mr. George C. Smith,* prosecuting attorney, *Mr. Alan C. Travis, Ms. Catherine B. Wilder,* and *Mr. William A. Reddington,* for appellee.

*Mr. James Kura* and *Mr. Gregory L. Ayers,* for appellant.

WHITESIDE, J. Defendant appeals from his conviction in the Franklin County Court of Common Pleas of obstructing justice and raises three assignments of error, as follows:

1. "The trial court erred in overruling defendant's motions for acquittal at the close of the State's case and at the end of all the evidence, for the reason that the defendant's mere denial of the whereabouts of a suspect, in light of all the evidence, cannot constitute the offense of obstructing justice."

2. "The trial court improperly instructed the jury on the statutory elements and conduct necessary to constitute obstructing justice."

3. "Ohio Revised Code Section 2921.32 violates due process of law in that it is unconstitutionally vague."

*Reporter's Note: A motion for leave to appeal was overruled by the Supreme Court of Ohio, June 30, 1978.

Defendant was convicted of a violation of R. C. 2921.-32(A)(1), which provides, as follows:

"(A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime, or to assist another to benefit from the commission of a crime, shall do any of the following:

"(1) Harbor or conceal such other person; * * *."

Were the evidence limited as implied by the first assignment of error to a showing of only a denial by the defendant of the whereabouts of a suspect, perhaps the assignment of error would be well taken. However, although the evidence is conflicting, the testimony of the arresting officer indicates conduct by the defendant which hindered the police in apprehending a suspect, in addition to the defendant's denial that the suspect was in the house in question.

The police officer in question went to the residence of the suspect to arrest him pursuant to a warrant of arrest. When the officer arrived at the residence, he noticed the suspect, whom he knew by sight, standing on the porch and then going inside the house. The officer went to the front door, and his partner went around the house to the back in case the suspect attempted to leave by that means.

The officer knocked on the door, which was answered by defendant, who did not reside at the residence. The officer testified as follows:

"Q. And did you indicate to Mr. Claybrook your purpose for being there?

"A. Yes, sir, I did.

"Q. What'd you tell him?

"A. When he came to the door and opened the door, I told him I wanted Michael Moorehead, I wanted to see him, I wanted to talk to him.

"Q. At the time you told Charles Claybrook that you wanted to talk to Michael Moorehead, was Mr. Claybrook still inside the house?

"A. He was standing in the door holding the door in a manner which would keep me from looking inside and would also keep me from going in."

The officer testified that the defendant told him that

Moorehead wasn't home. The officer advised defendant that he had seen Moorehead on the porch and run inside when he approached the house. Defendant insisted that it was a 15-year-old boy and not Moorehead which the officer had seen and called the boy to the door. The officer then testified:

"A. * * * I told him that wasn't Michael Moorehead, I wanted Michael, and I told him I had a warrant for Michael and I wanted him.

"Q. And when you told Charles Claybrook that you had a warrant to arrest Michael Moorehead, was the door still partially open?

"A. It was the same way, partially opened, with him kind of blocking it.

"Q. And was there anyone blocking the door?

"A. He was.

"Q. Did you ask at any time after you told him—that is, did you ask Mr. Claybrook at any time after you told him you had an arrest for Michael Moorehead to allow you to enter to execute that warrant?

"A. I did.

"Q. And what was Mr. Claybrook's response?

"A. He told me he wasn't home. He kept saying he wasn't home and I kept saying he was.

"Q. So what happened then?

"A. Well, we started arguing back and forth and I told him I wanted Michael, that he was in there and I had a warrant for him, tell him to come out, and he kept saying he wasn't in there, and I got tired of arguing back and forth, and I told him he was under arrest for obstructing, and snatched him out the door and took him to my cruiser."

Thereafter, the officer went back to the door and effected an arrest of Michael Moorehead.

From the foregoing, it can reasonably be concluded that defendant hindered, although he did not prevent, the arrest of Michael Moorehead, but for only a short period of time because of the persistence of the police officer. Defendant stood in such a way as to block the view of the police officer and to prevent him from entering the house.

Additionally, defendant attempted to convince the police officer that the person he had seen on the porch was a 15-year-old boy, instead of the suspect Moorehead. These were overt acts in addition to the speech consisting of a denial that Moorehead was at home, by which defendant attempted to conceal from the police officer the presence of Moorehead in the house and, thus, prevent his arrest. Accordingly, the evidence is sufficient to permit the jury to find that defendant committed the offense of obstructing justice. The first assignment of error is not well taken.

By the second assignment of error, defendant contends that the trial court erred in its charge to the jury, specifically by failing to give the following instructions requested by defendant.

"* * * 'If you find that the Defendant merely made an exculpatory denial, and did not affirmatively and actively make misleading statements, you must find him not guilty.

" 'If you find that the Police were not in fact hindered in discovering, apprehending, prosecuting, convicting or punishing Michael Moorehead, you must find the Defendant not guilty.' "

The trial court charged the jury, in pertinent part, as follows.

"The Defendant is charged with obstructing justice. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 8th day of March, 1977, in Franklin County, Ohio, that the Defendant, with purpose to hinder the application of criminal justice, harbored or concealed Michael Moorehead.

"Service of an arrest warrant is a portion of the application of criminal justice. There is no requirement that the Defendant be presented with or shown a copy of the arrest warrant.

"Purpose to hinder the application of criminal justice is an essential element of the crime of obstructing justice. The person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the Defendant a specific intention to hinder the application of criminal justice."

Although it may have been appropriate to have given the first portion of the requested charge in different language, defendant's denials in no way could be considered exculpatory, and to so characterize them would be confusing to the jury. However, the basic principle involved in the request was encompassed in the trial court's charge that the jury must find that defendant had the specific intention to hinder the application of criminal justice before they could find him guilty. Similarly, in light of the facts of this case, the second portion of the requested charge would be misleading and confusing to the jury. The gist of the offense herein involved is not the hindering of the police but, rather, harboring or concealing another with a purpose to hinder his apprehension or discovery. It is the act of haboring or concealing another with the purpose of hindering his discovery or apprehension that constitutes the crime. It is not necessary that haboring or concealing be sufficiently successful to prevent the discovery or apprehension of the suspect for any prolonged period of time. Accordingly, we find no prejudicial error in the trial court's refusal to give the requested instruction. Although it would have been better had the trial court used the language of the statute and referred to purpose to hinder the discovery or apprehension of the suspect, rather than the generic term, "application of criminal justice," no specific objection was made to this portion of the charge and, thus, any error was waived pursuant to Crim. R. 30. The second assignment of error is not well taken.

By the third assignment of error, defendant contends that R. C. 2921.32 is unconstitutionally vague. Although in his brief defendant refers to other portions of R. C. 2921.32, the only portion thereof pertinent to this case is R. C. 2921.32(A)(1) quoted above. Whether or not other portions of the statute are unconstitutionally vague is not presented by this case. We find nothing vague about R. C. 2921.32(A)(1). It clearly and specifically defines a crime in a way that anyone can understand. The act is that of harboring or concealing another, and to constitute the offense the act of haboring or concealing must be done with the specific purpose of hindering the discovery, apprehen-

sion, prosecution, conviction, or punishment of the person habored or concealed, or to assist him in benefiting from the commission of a crime. The portion of the statute most pertinent to this case is the harboring or concealing of another with the purpose of hindering his discovery or apprehension for a crime.

In *Columbus* v. *Fisher* (1978), 53 Ohio St. 2d 25, the Supreme Court stated at pages 28-29, as follows:

"We share the view intimated by the Court of Appeals below that subsection 3 of the disputed municipal ordinace and, necessarily, R. C. 2921.13(A)(3), must be given a limitative judicial construction. It is otherwise conceivable that this legislation, with its considerable maximum penalties, could provide a strong impetus for the employment of coercive inquisition as a method of criminal investigation.

"We do not believe that either the municipal or state law-making bodies * * * ever intended to make the utterance of unsworn oral misstatements, in response to inquiries initiated by law enforcement officials, punishable conduct."

The same caveat must be applied to R. C. 2921.32(A); it must likewise be given a limitative judicial construction so that the mere utterance of unsworn oral misstatements in response to inquiries initiated by law enforcement officers is not punishable conduct. Here, however, the statute requires, and the evidence shows, overt conduct in addition to mere unsworn oral misstatements and the misstatements coupled with the conduct constitutes harboring or concealing another with the purpose of hindering his discovery or apprehension for a crime pursuant to an arrest warrant. Accordingly, the third assignment of error is not well taken.

For the foregoing reasons, all three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

HOLMES, P. J., and McCORMAC, J., concur.