THE STATE OF OHIO *v.* PITTS.
(Two cases.)

(Nos. 86 CRB 12613 and 86 CRB 12615—Decided September 30, 1986.)

Hamilton County Municipal Court.

*Christine D. Krebs,* assistant city prosecutor, for plaintiff.
*H. Fred Hoefle,* for defendant Victor Pitts.
*Kenneth J. Koenig,* for defendant Jeffrey Pitts.

PAINTER, J. These cases were tried to the court on May 28, 1986. The facts were not seriously in dispute.

On May 14, 1986, a number of Cincinnati police officers were writing a traffic citation on Melish Avenue in Cincinnati. While the officers were engaged in writing the citations, a woman later identified as Beverly Pitts began yelling at the officers from a second floor window across the street. The officers testified that Beverly Pitts cursed them, threw a potato chip bag at them and threatened to shoot them. Beverly Pitts was obviously intoxicated.

After the officers finished dealing with the motorist, who went upon his way, they turned their attention to Beverly Pitts. The officers knocked at the front door of the residence and the door was opened by defendant Victor Pitts. Victor asked if the officers had a warrant, and continued to hold the door. There is some conflict in the testimony as to what transpired next, but it is cer-

tainly safe to say that Victor held the door for some period, was pushed aside, and the officers proceeded up the steps to the second floor, the locus of the window from which Beverly Pitts had shouted her insults and threats.

As the officers entered the hallway at the top of the stairs, they encountered defendant Jeffrey Pitts, who was holding an infant in his arms. An officer testified that when he asked "where is the woman," Jeffrey replied that she was not there. The officer then touched Jeffrey with his club and Jeffrey grabbed it. Jeffrey testified that he asked why the police were there and when poked with the club moved it from his chest to his side. He was maced and arrested. After removal of both defendants, Beverly Pitts was found locked in the bathroom. She was also arrested and later pled no contest to charges of disorderly conduct and aggravated menacing.

Victor and Jeffrey Pitts were visiting the residence on Melish Avenue and do not reside with Beverly Pitts.

Both defendants were charged with violation of R.C. 2921.32(A)(1), which states in pertinent part as follows:

"(A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime, or to assist another to benefit from the commission of a crime, shall do any of the following:

"(1) Harbor or conceal such other person."

The Tenth District Court of Appeals stated in *State* v. *Claybrook* (1978), 57 Ohio App. 2d 131, 135, 11 O.O. 3d 124, 127, 385 N.E. 2d 1080, 1083, that "[t]he gist of the offense herein involved is not the hindering of the police but, rather, harboring or concealing another with a purpose to hinder his apprehension or discovery." The crime is the act of harboring or concealing. Because "purpose" is defined in R.C. 2901.22(A) as a "specific intention to cause a certain result," a guilty defendant must act with specific intent to hinder the discovery or apprehension of the person concealed or harbored.

In *Claybrook,* a police officer went to arrest a suspect at his residence pursuant to an arrest warrant. The defendant, not a resident, but with knowledge of the arrest warrant, blocked the door and denied the suspect's presence. The court found the defendant's conduct consisted of overt acts that constituted concealing the suspect, and that the specific purpose of these acts was to hinder the discovery of the suspect. The *Claybrook* case can be distinguished from the instant case by the absence here of an arrest warrant. The officers involved had neither a search warrant nor an arrest warrant, and whether Beverly Pitts' previous conduct constituted sufficiently exigent circumstances to allow the officers to enter need not be reached in this case, since it it not asserted that either defendant had a legitimate expectation of privacy in the residence in question, not being residents, but only visitors. Assuming, *arguendo,* that Beverly's rights had been violated, these defendants do not have standing to assert any violation. *Rakas* v. *Illinois* (1978), 439 U.S. 128. It is also certainly arguable that exigent circumstances did exist, since Beverly Pitts had threatened to "blow the heads off" the officers.

In *Claybrook,* the defendant knew of the warrant and the reason for the police officer's presence. The defendants in this case had no such notice of the officers' purpose for entry. To be found guilty, the defendants must have acted to conceal a person with purpose to hinder the discovery of that person. It therefore follows that the defendants must know of the crime, the location of the suspect, and the police officers' purpose.

The uncontroverted testimony shows that Victor Pitts had been

downstairs doing laundry and did not know what Beverly Pitts had been doing, or at least this court could not find beyond a reasonable doubt that he did know. There is also not evidence beyond a reasonable doubt that Jeffrey Pitts knew of Beverly Pitts' conduct. Jeffrey Pitts' conduct could only be considered an unsworn oral misstatement, which standing alone does not violate R.C. 2921.32. *Claybrook, supra,* at 136, 11 O.O. 3d at 127, 385 N.E. 2d at 1084. See, also, *Columbus* v. *Fisher* (1978), 53 Ohio St. 2d 25, 7 O.O. 3d 78, 372 N.E. 2d 583.

In *Columbus* v. *Clay* (Nov. 3, 1983), Franklin App. No. 83AP-25, unreported, the defendant's husband was a suspect in an offense. The *Clay* case is almost exactly on point with the situation herein. Mrs. Clay was at home when the police officers came to the door. The officers had information that the suspect, Mr. Clay, was present at his residence and proceeded there and, as here, had no warrant. Defendant answered the door and told the officers that her husband was not at home. The officers then asked if they could come in and "look around," and she consented. The officers then found Mr. Clay in the attic. Mrs. Clay was charged with the identical section as were the Pitts brothers, that of harboring or concealing the fugitive. If anything, the Pittses' position herein is stronger than Mrs. Clay's. There was an arrest warrant for Mr. Clay, so he was in fact a fugitive; there was no warrant for Ms. Pitts, which fact is relevant only to whether the Pitts brothers knew that their sister was sought by the police. Also, Ms. Pitts obviously had a right to be in her own home, and it is doubtful whether she could be "harbored or concealed" in her own home by persons who were not residents there.

The court in *Clay* stated at 4 as follows: "All evidence of defendant's intent to hinder her husband's arrest being circumstantial in nature, in order to support a finding of guilt for obstructing justice, the evidence must be irreconcilable with any reasonable theory of defendant's innocence. *State* v. *Kulig* (1974), 37 Ohio St. 2d 157."

This court is unable to find beyond a reasonable doubt that either Jeffrey or Victor Pitts' conduct was a violation of R.C. 2921.32.

However, obstructing official business, R.C. 2921.31, is a lesser included offense of obstructing justice. *State* v. *Gordon* (1983), 9 Ohio App. 3d 184, 9 OBR 294, 458 N.E. 2d 1277. Applying the test of *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382, 18 O.O. 3d 528, 415 N.E. 2d 303, (1) obstructing justice cannot be committed without obstructing official business, and (2) to prove obstructing official business, there is no requirement to prove intent to hinder the discovery of another for crime, but only to prove intent to prevent official performance. Therefore, one element necessary to the greater offense is lacking in the lesser offense.

R.C. 2921.31 states in part as follows: "(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers a public official in the performance of his lawful duties."

This statute only applies to *acts* by defendants. *Columbus* v. *Michel* (1978), 55 Ohio App. 2d 46, 9 O.O. 3d 207, 378 N.E. 2d 1077; *State* v. *Muldrow* (1983), 10 Ohio Misc. 2d 11, 10 OBR 164, 460 N.E. 2d 1177. An act by the defendant must hamper or impede a public official in the performance of lawful duties, and the defendant must have a purpose to prevent, obstruct or delay such performance. The third element is that the defendant does so without a privilege to so act.

Victor's act of blocking entrance to the house did hamper the police officers' performance of their lawful duty to ap-

prehend Beverly Pitts. If the purpose was not to hinder the discovery of another for crime as is required for proof of obstructing justice, the defendant's purpose may constitute the specific intent to prevent or delay the officers' performance. The defendant cites *Columbus* v. *Michel, supra,* where the defendant's refusal to open a door did not constitute a violation for the proposition that Victor's act also did not constitute a violation of this section. The court in *Michel* specifically held that the omission was not a violation, and the statute required a doing of some act. Victor Pitts did act and block the door.

Victor Pitts was not privileged to impede the officers' performance because the entry was warrantless. Not only did Victor have no standing to assert his sister's privacy interest in the home, see *Rakas* v. *Illinois, supra;* he also had no privilege to impede the officers' entry. *State* v. *Pembaur* (1984), 9 Ohio St. 3d 136, 9 OBR 385, 459 N.E. 2d 217, held as follows: "Absent bad faith on the part of a law enforcement officer, an occupant of business premises cannot obstruct the officer in the discharge of his duty, whether or not the officer's actions are lawful under the circumstances." Though the *Pembaur* case is limited to "business premises," surely a visitor, not the lessee, of residential premises could have no greater rights than a lessee of business premises.

Victor's lack of any right to resist the officers' entrance is also grounded upon common sense, and the exigencies of modern society. In *Columbus* v. *Fraley* (1975), 41 Ohio St. 2d 173, 70 O.O. 2d 335, 324 N.E. 2d 735, the Ohio Supreme Court altered the common-law rule that one may resist an unlawful arrest, and stated: "[i]n the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." *Id.* at paragraph three of the syllabus. In *Pembaur, supra,* this rationale was extended specifically to apply to R.C. 2921.31(A). Whether police officers had a right to enter a dwelling should be determined in the setting of a courtroom, not by brute force out in the community.

There was no question that Victor Pitts did have reason to believe that the officers were in fact police officers, since many of them were fully in uniform. For that reason, Victor Pitts did not have the privilege to block the entry by police officers to his sister's residence, and his conduct violated R.C. 2921.31.

Defendants Jeffrey Pitts and Victor Pitts are found not guilty of obstructing justice, R.C. 2921.32(A)(1). Defendant Victor Pitts is found guilty of obstructing official business, R.C. 2921.31.

*Judgment accordingly.*