The STATE of Ohio, Appellant,

v.

HOWARD, Appellee.

[Cite as *State v. Howard* (1991), 75 Ohio App.3d 760.]

Court of Appeals of Ohio,
Pike County.

No. 460.

Decided Aug. 26, 1991.

*Robert N. Rosenberger*, Prosecuting Attorney, and *Paul W. Cox*, Assistant Prosecuting Attorney, for appellant.

*David Sief* and *Ed Rhoads*, for appellee.

PETER B. ABELE, Judge.

This is an appeal from a judgment entered by the Pike County Common Pleas Court granting appellee's motion to suppress evidence. James Mitchell Howard, defendant below and appellee herein, was indicted by the Pike County Grand Jury for obstructing justice in violation of R.C. 2921.32(A)(1), a felony of the fourth degree. After the court below granted appellee's motion

to suppress evidence, appellant filed a timely notice of appeal in compliance with Crim.R. 12(J).

Appellant assigns the following errors: [1]

First assignment of error:

"The trial court erred by finding the police were required to have a search warrant to enter the residence of a third party, since the warrant requirement does not prevent police from entering the residence of a third party when the police see inside the residence a fugitive with an outstanding felony warrant; therefore, the third party who prevented entrance to his residence by the police obstructed justice as defined in Section 2921.32(A)(1) of the Ohio Revised Code."

Second assignment of error:

"The trial court erred by finding that there were no exigent circumstances when police have a felony warrant for the arrest of a fugitive who is visible inside a third party's residence to police standing outside the residence, there are exigent circumstances sufficient to give police the right to gain entry to the residence for the purpose of executing the arrest warrant."

On March 12, 1990, the grand jury returned an indictment alleging appellee engaged in conduct constituting obstruction of justice in violation of R.C. 2921.32(A)(1), a felony of the fourth degree. Appellee pleaded not guilty and the court scheduled a jury trial for August 27, 1990.

On the day scheduled for jury trial, the parties advised the court of their agreement to submit a pre-trial defense motion to the court for immediate determination. The court proceeded to hear the motion. Although appellee called the motion a motion to dismiss, the court treated the motion as a motion to suppress evidence. The parties submitted the following stipulated facts:

" * * * *JUDGE:* Okay. Now, have the parties agreed upon a statement of facts for the Court to consider, then, with respect to this motion?

"*MR. ROSENBERGER:* Yes, Your Honor, we have tried to come up with a stipulation of facts that probably is the State's version of the facts that are in this case, and if under those circumstances, the Court feels that we do not have a claim or an action, at that point we assume that the Court will grant that motion.

---

1. In their appellate briefs, both parties argue about whether the acts committed by appellee constitute a violation of R.C. 2921.32(A)(1). Because our review in the case *sub judice* is restricted to a review of the trial court's August 31, 1990 judgment granting appellee's motion to suppress evidence, we cannot address the question of whether appellee's acts constitute a R.C. 2921.32(A)(1) violation.

"Your Honor, it's my understanding our stipulated facts would be that, I believe, on January 29th, the Pike County Common Pleas Court issued a warrant for one Steve Hamilton based upon an indictment returned of a breaking and entering and two theft offenses. Then on or about February 19, 1990, the Pike County Sheriff's Department received a tip that the defendant, Steve Hamilton, was located at the residence of defendant located within Pike County. The Officers went to that residence based upon that tip and observed the felon for which they had a warrant of Steve Hamilton inside the trailer of the defendant, Mr. Howard. They then approached the door, called upon Mr. Howard to allow them to enter to execute their warrant upon the defendant, Steve Hamilton.... excuse me.... upon the felon Steve Hamilton. They do not have an arrest warrant in hand. This defendant, Mr. Howard, made a demand upon them to see a warrant, whether that is an arrest warrant or a search warrant or both. The Officers again indicated that the .. they had an arrest warrant but did not have it in hand, and the defendant, James Mitchell Howard, refused them access to the fugitive or to the felon, Steve Hamilton. Steve Hamilton then made his escape from the trailer of Mr. Howard. I think that's basically our stipulated facts. Is that accurate?

"*DEPUTY BLANTON:* That's accurate.

"*MR. RHOADS:* Yes, that's ... for the record, Your Honor, I would like to mention so my client will know that it is on the record. * * * "

The trial court judge accepted the stipulated facts. After considering the stipulated facts and the arguments of counsel, the court below granted appellee's motion to suppress evidence. The court made the following comments in the record:

"* * * *JUDGE:* Okay. Well, the indictment in this case charges the offense of obstructing justice which is ... it reads that 'James Mitchell Howard did, with purpose to hinder the discovery, apprehension, prosecution, conviction or punishment of another for crime or to assist another to benefit from the commission of a crime, harbor or conceal such other person, and the crime committed by the person aided is a felony in violation of Section 2921.32(A)(1) of the Revised .. Ohio Revised Code.' That's the obstructing justice statute.

"Okay, now let's see how I want to say this. It's the ... first of all, based upon the statement of facts, it's the Court's impression that the Officers were required to obtain a search warrant before entering this defendant's home to arrest Mr. Hamilton. There was no consent given to search and I have not heard anything that would amount to .. what I consider to be exigent circumstances that would obviate the need for a search warrant. So that's the first finding I'll make. Number two: It's the Court's opinion that the fact

that the defendant demanded to see a warrant ... did he demand a specific type of warrant, or hust [*sic*] say a warrant?

"*MR. ROSENBERGER:* It's my ... our understanding is that he demanded to see a warrant. Uh ...

"*JUDGE:* Okay. Well, so that's ...

"*MR. HOWARD:* No, he told me he had a search warrant.

"*MR. RHOADS:* Okay.

"*MR. HOWARD:* And I asked him to see it.

"*MR. RHOADS:* Okay. Apparently ... as near ... there's some conflicting testimony or statements, but ...

"*JUDGE:* Okay. Well, let's stay with the stipulation then ...

"*MR. RHOADS:* Okay.

"*JUDGE:* (Continuing) ... and limit it to that since there's some conflict about that. It's this Court's opinion that the fact that this defendant demanded a warrant or to see a warrant, cannot be used as evidence of his purpose to hinder the discovery, apprehension, prosecution, conviction or punishment of another for crime, cause I think he does have a ... that he does have the right to demand a warrant for admitting Law Officers into his home. So, I don't believe that that ... can be used as evidence against him for purposes of this particular charge. Now, it is my understanding that since that is the case, the State feels that it would be ... its case would be jeopardized and couldn't proceed on that basis. Is that right. Mr. Prosecutor?

"*MR. ROSENBERGER:* That's correct, Your Honor.

"*JUDGE:* So, based upon that statement, I want to be ... I'm gonna be certain how this matter's handled, the Court would conclude that the indictment then, or the facts as stated, would not constitute the offense without more, and the appropriate order should be issued accordingly. I don't ... if it's called a dismissal, it's called a dismissal. It may be a motion to suppress or a limitation on evidence. Whatever it is, it is. I don't want to call it something it isn't. But my understanding from the Prosecutor was that if that's the Court's ruling about that particular issue, that the State would not be prepared to go forward with its case. Is that correct, Mr. ...

"*MR. ROSENBERGER:* Yes, Your Honor. We intended to ask the Court for an instruction at the end of the State's case in regards to the necessity of a warrant under these circumstances, and the Court's ruled. By ruling on this, I think it's making that ruling.

*"JUDGE:* Okay. But the ... it's my understand [*sic*] that ruling impacts the Prosecutor's case sufficiently to ... that you couldn't go forward today then, or would not be prepared to go forward with the charge today.

*"MR. ROSENBERGER:* That's correct, Your Honor.

*"JUDGE:* Okay, the Court will issue an appropriate order to that effect in writing and the intention, I believe, and the understanding is, that the Prosecutor would have a right to appeal that ruling to get some clarification if you deem it advisable to do so.

*"MR. RHOADS:* That's correct, Your Honor. * * * "

On August 31, 1990, the court below filed an entry granting appellee's motion to suppress evidence. The court wrote in pertinent part:

" * * * For purposes of the motion, the parties stipulated certain facts which were read into the record by the prosecutor. To summarize, Pike County Sheriff's deputies went to the home of defendant to arrest Steven Hamilton pursuant to an arrest warrant for B & E. The deputies did not take the arrest warrant with them. Upon arrival, the deputies observed Hamilton inside defendants [*sic*] home. Defendant refused to allow the deputies to enter his home to arrest Hamilton without 'a warrant'.

"First, it is the Court's opinion that the deputies were required to have a *search* warrant to enter defendants [*sic*] home to arrest Hamilton. There was no consent or exigent circumstances obviating the search warrant requirement. *Steagald v. U.S. (1981), 451 U.S. 204* [101 S.Ct. 1642, 68 L.Ed.2d 38].

"Second, it is the Courts [*sic*] opinion that defendants [*sic*] demand that the officers produce a warrant before permitting them to enter his home, a right granted him by the Constitution, cannot be used as evidence that he committed the crime of obstructing justice. *cf. State v. Pembaur (1984), 9 Ohio St.3d 136* [9 OBR 385, 459 N.E.2d 217].

"Upon announcement of the opinion, the Prosecuting Attorney represented to the Court that the State could not proceed to trial.

"It is therefore the order of the Court that the jury trial be continued in order to give the State an opportunity to appeal the Court's determination herein. If the State does not appeal, this case should be dismissed. * * * "

It is from the judgment of the trial court granting appellee's motion to suppress evidence that appellant has filed this appeal. Because both assignments of error involve similar issues, the assignments of error will be considered together.

## I & II

In his first assignment of error, appellant asserts the court's finding that the police were required to obtain a search warrant prior to entering appellee's residence to execute the arrest warrant for the nonresident, James Hamilton, was erroneous. Appellant maintains when police could see through a window inside a third party's residence and, based upon the visual observation, detect the presence of the person named in the arrest warrant, a search warrant is not required in order to enter the residence.

In his second assignment of error, appellant asserts, in the alternative, that exigent circumstances justified the officers' warrantless, nonconsensual entry into appellee's residence to arrest the nonresident named in the arrest warrant.

Appellee argues the officers needed a search warrant to enter his residence and no exigent circumstances were present justifying the warrantless entry into the residence.

In the case *sub judice,* we must decide whether the police were required to obtain a search warrant prior to entering appellee's residence to arrest the nonresident named in the arrest warrant. If we decide this question in the affirmative, we must then determine whether any exception to the warrant requirement applies permitting the warrantless entry into appellee's residence.

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fourth Amendment protects against unreasonable government intrusions into areas where legitimate expectations of privacy exist. *United States v. Chadwick* (1977), 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538. The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *Mincey v. Arizona* (1978), 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290, 298; *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585; *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; and *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. The touch-

stone of a Fourth Amendment analysis of lawfulness of a search is whether a person has a constitutionally protected reasonable expectation of privacy. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; *California v. Ciraolo* (1986), 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210.

█ When one's home is to be searched, the warrant requirement embodied in the Fourth Amendment constitutes the most compelling protection against unreasonable governmental intrusions. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732. Warrants are generally required to search a person's home or his person unless "the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. *McDonald v. United States* (1948), 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (search of arrested suspect and area within control for weapons); *Warden v. Hayden* (1967), 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (hot pursuit of fleeing suspect); *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (imminent destruction of evidence). Thus, for a warrantless search to be valid, it must fall within one of the narrow and specifically delineated exceptions to the warrant requirement. *Thompson v. Louisiana* (1985), 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246.

In the case *sub judice*, appellant contends that because the officers observed the person named in the arrest warrant through a window, the officers did not need a search warrant in order to enter the residence to execute the arrest warrant. Appellant claims the officers "merely wanted entrance to the residence in order to execute the arrest warrant" and did not intend to search the premises. We disagree with appellant's view of the law.

In *Steagald v. United States* (1981), 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38, federal agents obtained an arrest warrant for one Rickey Lyons. Based upon information that Lyons could be located at a certain address, the agents made a nonconsensual entry into a third-party's residence to search for Lyons. Lyons was not found at the residence, although the agents seized contraband found during the search of the premises. The court held that police need a search warrant to conduct a search of the third-party's residence for the person named in the arrest warrant. The arrest warrant could not be used as authority to enter the third-party's residence to arrest the nonresident. The court wrote:

"The question before us is a narrow one. The search at issue here took place in the absence of consent or exigent circumstances. Except in such special situations, we have consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth

Amendment unless done pursuant to a warrant. See *Payton v. New York,* 445 U.S. 573, [100 S.Ct. 1371, 63 L.Ed.2d 639] (1980); *Johnson v. United States,* 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436] (1948). Thus, as we recently observed: 'In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.' * * * Here, of course, the agents had a warrant—one authorizing the arrest of Ricky Lyons. However, the Fourth Amendment claim here is not being raised by Ricky Lyons. Instead, the challenge to the search is asserted by a person not named in the warrant who was convicted on the basis of evidence uncovered during a search of his residence for Ricky Lyons. Thus, the narrow issue before us is whether an arrest warrant—as opposed to a search warrant—is adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in absence of exigent circumstances.

"The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search. * * * while an arrest warrant and a search warrant both serve to subject the probable cause determination of the police to judicial review, the interests protected by the two warrants differ. An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A search warrant, in contrast, is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." *Id.,* 451 U.S. at 211–213, 101 S.Ct. at 1647–1648, 68 L.Ed.2d at 45–46.

The court further wrote:

"Thus, while the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect petitioner's privacy interest in being free from an unreasonable invasion and search of his home. Instead, petitioner's only protection from an illegal entry and search was the agent's personal determination of probable cause. In the absence of exigent circumstances, we have consistently held that such judicially untested determinations are not reliable enough to justify an entry into a person's home to arrest him without a warrant, or a search of a home for objects in the absence of a search warrant. *Payton v. New York, supra; Johnson v. United States, supra.* We see no reason to depart from this settled course when the search

of a home is for a person rather than an object." *Id.* at 213–214, 101 S.Ct. at 1648, 68 L.Ed.2d at 46.

"In sum, two distinct interests were implicated by the search at issue here— Ricky Lyons' interest in being free from an unreasonable seizure and petitioner's interest in being free from an unreasonable search of his home. Because the arrest warrant for Lyons addressed only the former interest, the search of petitioner's home was no more reasonable from petitioner's perspective than it would have been if conducted in the absence of any warrant. Since warrantless searches of a home are impermissible absent consent or exigent circumstances, we conclude that the instant search violated the Fourth Amendment." *Id.* at 216, 101 S.Ct. at 1649–1650, 68 L.Ed.2d at 48.

Thus, the fact that police possess an arrest warrant and are attempting to arrest a suspect does not, standing alone, permit the police to make a nonconsensual, warrantless entry into a third-party's residence to search for the suspect. The invasion of constitutionally protected interests in order to perform a warrantless search or seizure is unreasonable in absence of exigent circumstances. *Steagald, supra; Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639; *Dunaway v. New York* (1979), 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824; and *United States v. Chadwick, supra.* A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. *United States v. Jacobsen* (1984), 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85.

The case *sub judice* is very similar to *State v. Wilson* (1981), 2 Ohio App.3d 151, 2 OBR 166, 440 N.E.2d 1373. In *Wilson,* the Toledo Police Department had secured an arrest warrant for a suspect. The police learned the suspect was staying in the apartment of one Ernestine Wilson and officers went to Wilson's apartment to arrest the suspect pursuant to the arrest warrant. Wilson denied any knowledge of the whereabouts of the suspect. Subsequently, the police returned to Wilson's apartment and gained entry using a passkey. Both Wilson and the suspect were in the apartment. Wilson was charged with obstruction of justice.

Wilson filed a motion to suppress evidence and the motion was overruled by the trial court. Wilson was convicted of obstruction of justice. The Lucas County Court of Appeals, following *Steagald, supra,* reversed the trial court's decision and held that a search warrant was required to enter Wilson's residence. Also, the court found no exigent circumstances existed to permit a warrantless entry into Wilson's residence.

In *United States v. Harper* (C.A.9, 1991), 928 F.2d 894, the court confronted a situation comparable to the case *sub judice.* The court wrote:

" * * * An arrest warrant does not carry with it the authority to enter the homes of third persons. *Steagald v. United States* * * *. Thus, in *Perez v. Simmons*, 900 F.2d 213 (9th Cir.1990), *amending* 884 F.2d 1136 (9th Cir.1989), we held that the police may enter a home with an arrest warrant only if they have probable cause to believe the person named in the warrant resides there. *Id.; see also United States v. Dally*, 606 F.2d 861 (9th Cir.1979) (police entitled to search apartment because they had sufficient evidence to reasonably believe parole violator resided there). If the police lack probable cause to believe the suspect is an actual resident, but have probable cause to believe he's present, they must get a search warrant. *Perez*, 900 F.2d at 213." *Id.* at 896.

Appellant's assertion that the officers did not intend to "search" appellee's residence and merely wanted entrance into appellee's residence to arrest the nonresident named in the arrest warrant is not persuasive. It is of no consequence that the search is for a person rather than evidence; the search must still generally be accomplished by a warrant. *Steagald, supra;* and *State v. Morris* (Nov. 29, 1989), Montgomery App. No. 10992, unreported, 1989 WL 145175.

Appellant cites *State v. Claybrook* (1978), 57 Ohio App.2d 131, 11 O.O.3d 124, 385 N.E.2d 1080, for the proposition that a defendant's "overt acts" preventing the detection of a suspect sought by officers may be sufficient for a conviction of obstruction of justice. In *Claybrook*, the police were attempting to execute an arrest warrant. After the police officer arrived at the suspect's residence, the officer noticed the suspect standing on the porch then going inside the residence. The officer went to the front door and knocked. The defendant, who did not reside at the residence, answered the door and blocked the officer's access to the suspect. The defendant also attempted to convince the officer that the officer had not seen the suspect and instead saw a fifteen-year-old neighbor.

The issue in *Claybrook* was whether the defendant's acts constituted obstruction of justice. The court held that while mere unsworn oral misstatements in response to inquiries by police officers do not violate R.C. 2921.32(A), the defendant's attempt to block the view of the police officer and prevent the officer from entering the house, and the defendant's attempt to mislead the officer as to the whereabouts of the suspect were overt acts and constituted prohibited conduct.

Appellant's reliance on *Claybrook* is misplaced. In *Claybrook*, the defendant did not reside at the residence in question. The suspect named in the arrest warrant resided on the premises. Also, in *Claybrook* the issue was whether the defendant's acts constituted the offense of obstruction of justice.

771

The issues presented in the instant case regarding the necessity of obtaining a search warrant and appellee's request that the police produce a warrant were not addressed in *Claybrook.*

Appellant also relies on *State v. Pembaur* (1984), 9 Ohio St.3d 136, 9 OBR 385, 459 N.E.2d 217, certiorari denied (1984), 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373. In *Pembaur,* deputies sought access to a doctor's private office. The defendant resisted and deputies forcibly entered the office with an axe. The court restricted the privilege to resist unlawful entry into business premises and wrote:

" * * * absent bad faith on the part of a law enforcement officer, an occupant of business premises cannot obstruct the officer in discharge of his duty, whether or not the officer's actions are lawful under the circumstances." *Id.,* 9 Ohio St.3d at 138, 9 OBR 385, 459 N.E.2d 217.

The court determined the defendant was not privileged to impede the officers in their attempt to serve bench warrants, or capiases, upon two employees of the business. Again, this case did not discuss the necessity of obtaining a search warrant prior to entering a third-party residence or a request that the police produce a warrant prior to gaining entry.

We find *Middleburg Heights v. Theiss* (1985), 28 Ohio App.3d 1, 28 OBR 9, 501 N.E.2d 1226, to be helpful in our analysis of the case at bar. In *Theiss,* the police were investigating a loud noise complaint at Theiss's residence. The police made a warrantless, nonconsensual entry into the residence. After the officers entered the premises, a fracas ensued. The defendants were subsequently convicted of assault and resisting arrest. The central issue before the appellate court was whether, assuming the officers' entrance was unlawful, the defendants were privileged to assault the officers. The court wrote:

"The extent of the privilege to resist unlawful entry into the home has yet to be dealt with in Ohio. The United States Supreme Court has repeatedly held, however, that searches and seizures inside a home without a warrant are presumptively unreasonable. *Steagald v. United States* * * *, *Payton v. New York* * * *, and *Coolidge v. New Hampshire* * * *. An occupant can act on that presumption and refuse admission. The Fourth Amendment gives him a constitutional right to refuse to consent to entry and search. The assertion of that right cannot be a crime. *Camara v. Municipal Court* (1967), 387 U.S. 523 [87 S.Ct. 1727, 18 L.Ed.2d 930] * * *, *Schneckloth v. Bustamonte* (1973), 412 U.S. 218 [93 S.Ct. 2041, 36 L.Ed.2d 854] * * *, *District of Columbia v. Little* (1950), 339 U.S. 1 [70 S.Ct. 468, 94 L.Ed. 599] * * *; *United States v. Prescott* (C.A.9, 1978), 581 F.2d 1343; *Miller v. United States* (C.A.5, 1956), 230 F.2d 486.

"It is clear from these cases that an individual can lawfully refuse to consent to a warrantless search. Further, we recognize, consistent with the aforementioned cases, that there exists at least some limited right to resist entrance, such as locking or closing the door or physically placing one's self in the officer's way. (footnote omitted). We do not, however, recognize the appellants' conduct herein as privileged. This is because the offenses charged do not relate to the entry of the premises. The charges stem from assaults on the police officers *after access had been gained.* We hold, therefore, that violence against an officer after he has gained entrance into the residence, albeit unlawfully, with a purpose to cause physical injury rather than to resist entry, is not privileged conduct. * * * " (Emphasis *sic.*) *Id.,* 28 Ohio App.3d at 4–5, 28 OBR 9, 501 N.E.2d 1226.

The court in *Theiss* thus recognized that individuals can lawfully refuse to consent to a warrantless entry and search, and further recognized that there exists a limited right to resist entry.

█ In the case *sub judice,* appellant demanded to see a warrant prior to permitting the officers to enter his residence. Appellant's assertion of his constitutional right to refuse to consent to the entry and search cannot be a crime and cannot be used as evidence against him for purposes of establishing the elements of obstruction of justice.

Courts disapprove of penalties imposed for exercising constitutional rights. *State v. Landrum* (1990), 53 Ohio St.3d 107, 110, 559 N.E.2d 710. In *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, the court prohibited prosecutorial comment upon a defendant's exercise of his right to remain silent. The *Griffin* court commented that imposing a penalty upon the exercise of a constitutional right "cuts down on the privilege by making its assertion costly." *Id.* at 614, 85 S.Ct. at 1233, 14 L.Ed.2d at 110. See, also, *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91; *United States v. Robinson* (1988), 485 U.S. 25, 33, 108 S.Ct. 864, 869, 99 L.Ed.2d 23, 31. In *Middleburg Heights, supra,* 28 Ohio App.3d at 4, 28 OBR at 12, 501 N.E.2d at 1229, the court noted that the assertion of a constitutional right to refuse to consent to an entry and search cannot be a crime.

█ Appellant next asserts that because the suspect named in the arrest warrant was in "plain view" of the officer looking through the window of the third-party residence, the officers were justified in entering the residence to execute the arrest warrant without first obtaining a search warrant. We cannot agree with appellant's argument.

The plain-view exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating

evidence or contraband when it is discovered in a place where the officer has a right to be. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; *Harris v. United States* (1968), 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; *State v. Williams* (1978), 55 Ohio St.2d 82, 9 O.O.3d 81, 377 N.E.2d 1013; *Athens v. Wolf* (1974), 38 Ohio St.2d 237, 67 O.O.2d 317, 313 N.E.2d 405. For the plain-view doctrine to apply to permit a warrantless seizure, the police officer must not only be located in a place where the officer has a right to be, but the officer must also have lawful right or access to the object in plain view. *Horton v. California* (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112. In *Horton* the court wrote:

"It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at a place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view, its incriminating character must also be 'immediately apparent.' * * * *Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.*" (Emphasis added.) *Id.* at 136–137, 110 S.Ct. at 2308, 110 L.Ed.2d at 123.

The court further noted that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." *Id.* at 137, 110 S.Ct. at 2308, 110 L.Ed.2d at 123, fn. 7. The court wrote:

"Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. *Taylor v. United States,* 286 U.S. 1 [, 52 S.Ct. 466, 76 L.Ed. 951 (1932) ]; *Johnson v. United States,* 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436 (1948) ]; *McDonald v. United States,* 335 U.S. 451 [, 69 S.Ct. 191, 93 L.Ed. 153 (1948) ]; *Chapman v. United States,* 365 U.S. 610 [, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) ]; * * * We have since applied the same rule to the arrest of a person in his home. See *Minnesota v. Olson,* 495 U.S. 91 [, 110 S.Ct. 1684, 109 L.Ed.2d 85] (1990); *Payton v. New York,* 445 U.S. 573 [, 100 S.Ct. 1371, 63 L.Ed.2d 639] (1980)." *Id.*

See, also, *California v. Ciroala* (1986), 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210.

Clearly, in the case *sub judice* the "plain view" doctrine is not applicable. Even though the officer observed the suspect named in the arrest warrant through a window, the officer did not possess the lawful right of access to

enter appellee's residence to arrest the suspect. Absent exigent circumstances, a search warrant was required to enter appellee's residence.

■ Appellant further asserts that an exigent circumstance existed and permitted the officers to make a warrantless entry into appellee's residence. Appellant argues the exigent circumstance, "hot pursuit," existed because one officer observed the person named in a felony arrest warrant in appellee's residence. Appellee contends that no exigent circumstances existed justifying entry into his residence.

In *Steagald, supra,* the court stated that absent exigent circumstances, entry into a person's home to search for a person named in an arrest warrant is not permitted. The concept of exigent circumstances was addressed by the United States Supreme Court in *Welsh, supra.* The court wrote:

" * * * the Court decided in *Payton v. New York, supra,* that warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances. *Id.,* 445 U.S., at 583–590 [100 S.Ct. at 1378–1382, 63 L.Ed.2d at 648–655] * * *. At the same time, the Court declined to consider the scope of any exception for exigent circumstances that might justify warrantless home arrests * * *, thereby leaving to the lower courts the initial application of the exigent-circumstances exception. (footnote omitted). Prior decisions of this Court, however, have emphasized that exceptions to the warrant requirement are 'few in number and carefully delineated,' * * * and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Indeed, the Court has recognized only a few such emergency conditions, see *e.g., United States v. Santana,* 427 U.S. 38 [96 S.Ct. 2406, 49 L.Ed.2d 300] * * * (hot pursuit of a fleeing felon); *Warden v. Hayden,* 387 U.S. 294 [87 S.Ct. 1642, 18 L.Ed.2d 782] * * * (same); *Schmerber v. California,* 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed.2d 908] * * * (destruction of evidence); *Michigan v. Tyler,* 436 U.S. 499 [98 S.Ct. 1942, 56 L.Ed.2d 486] * * * (ongoing fire), and has actually applied only the "hot pursuit" doctrine to arrests in the home, see *Santana, supra.* * * *

"Consistently with this approach, the lower courts have looked to the nature of the underlying offense as an important factor to be considered in the exigent-circumstances calculus. * * *" 466 U.S. at 749–751, 104 S.Ct. at 2097–2098, 80 L.Ed.2d at 743–744.

We distinguish the case *sub judice* from other "hot pursuit" cases and reach the conclusion that no "hot pursuit" situation began when the officer observed the person named the arrest warrant inside appellee's residence. In *Warden v. Hayden* (1967), 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, the United States Supreme Court recognized the right of police to make a

warrantless entry to arrest a robber and to search for his weapons where the police had probable cause to believe the robber had entered a house less than five minutes before the police arrived on the scene. In *United States v. Santana* (1976), 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300, a suspect was standing in the doorway of her home and she retreated to the interior of her home to avoid police officers. The court held, citing *Warden, supra,* that while standing in the doorway the suspect was located in a "public place" and she could not thwart her lawful arrest by retreating from a public place to a private place. The police were in "hot pursuit" and a warrantless entry into the residence was permitted.

In the case *sub judice,* the suspect named in the arrest warrant was not in a public place when first observed by the officer and the suspect's attempted arrest was not set in motion in a public place. See *United States v. Crespo* (C.A.2, 1987), 834 F.2d 267. The first time the officer observed the suspect was when the officer peered through appellee's window. We find the fact that the officer was aware that the suspect was inside appellee's residence does not, standing alone, create a sufficient or suitable basis for the application of the hot pursuit doctrine.

Moreover, in the instant case no additional facts were presented that would, perhaps, constitute other acceptable exigent circumstances thereby justifying the warrantless entry into appellee's residence to execute the arrest warrant. See *Dorman v. United States* (C.A.D.C., 1970), 435 F.2d 385; *United States v. Martino* (C.A.2, 1981), 664 F.2d 860, certiorari denied, 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373; *United States v. Sangineto–Miranda* (C.A.6, 1988), 859 F.2d 1501; *Minnesota v. Olson* (1990), 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85; *Welsh v. Wisconsin, supra.* The mere fact that a felony-arrest warrant was issued for the suspect does not serve as a sufficient basis for the warrantless entry in the case *sub judice.*

We recognize the hardships that rural law enforcement officers encounter when working for departments with limited resources. The facts of the instant case can be contrasted with *Steagald, supra,* where twelve federal agents were involved in the search for Ricky Lyons. However, despite the problems facing rural law enforcement officers, we may not deviate from constitutional requirements.

The United States Supreme Court has stated that the mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment. See *Coolidge, supra,* and *Mincey, supra.* In *Steagald, supra,* the court wrote:

"The Government also suggests that practical problems might arise if law enforcement officers are required to obtain a search warrant before entering

the home of a third party to make an arrest. The basis of this concern is that persons, as opposed to objects, are inherently mobile, and thus officers seeking to effect an arrest may be forced to return to the magistrate several times as the subject of the arrest warrant moves from place to place. We are convinced, however, that a search warrant requirement will not significantly impede effective law enforcement efforts.

"First, the situations in which a search warrant will be necessary are few. As noted in *Payton v. New York* * * *, an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest. Furthermore, if probable cause exists, no warrant is required to apprehend a suspected felon in a public place. *U.S. v. Watson* [423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598(1976)] * * *. Thus, the subject of an arrest warrant can be readily seized before entering or after leaving the home of a third party. Finally, the exigent-circumstances doctrine significantly limits the situations in which a search warrant would be needed. For example, a warrantless entry of a home would be justified if the police were in 'hot pursuit' of a fugitive. See *U.S. v. Santana* * * *. Thus, to the extent that searches for persons pose special problems, we believe that the exigent circumstances doctrine is adequate to accommodate legitimate law enforcement needs. * * *

"Whatever practical problems remain, however, cannot outweigh the constitutional interests at stake. Any warrant requirement impedes to some extent the vigor with which the Government can seek to enforce its laws, yet the Fourth Amendment recognizes that this restraint is necessary in some cases to protect against unreasonable searches and seizures. We conclude that this is such a case. The additional burden imposed on the police by a warrant requirement is minimal. In contrast, the right protected—that of presumptively innocent people to be secure in their homes from unjustified, forcible intrusions by the Government—is weighty. Thus, in order to render the instant search reasonable under the Fourth Amendment, a search warrant was required." 451 U.S. at 220–222, 101 S.Ct. at 1652–1653, 68 L.Ed.2d at 51–52.

Therefore, we hold that in the case *sub judice* a search warrant was required to enter appellee's residence. Further, we hold no exigent circumstances existed negating the need for a search warrant.

Accordingly, based upon the foregoing, appellant's assignments of errors are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

GREY, J., concurs.

HARSHA, J., dissents.

HARSHA, Judge, dissenting.

I dissent since I believe suppression was the incorrect remedy. Initially, I agree that a search warrant was clearly required to enter appellee's residence for the purpose of executing the arrest warrant. See the abundant authority cited in the principal opinion. I also agree that the exercise of appellee's Fourth Amendment right to privacy in his residence, as opposed to a business premises open to the public, see *State v. Pembaur* (1984), 9 Ohio St.3d 136, 9 OBR 385, 459 N.E.2d 217, cannot be the basis for an obstructing justice charge. See, *e.g., Middleburg Hts. v. Theiss* (1985), 28 Ohio App.3d 1, 28 OBR 9, 501 N.E.2d 1226, and the authorities therein as cited by the principal opinion.

However, in my view there was no search, illegal or otherwise, conducted by the police. Accordingly, without an illegal search, there can be no illegal fruit to suppress. Appellee demanded to see a warrant before allowing entrance to his residence. Since they had no warrant, the officers honored his demand and did not attempt entry. Given the lack of a search, one is tempted to ask "Where's the beef?", *i.e.,* what's to suppress?

The trial court "suppressed" the fact that appellee asserted his constitutional rights. The prosecutor apparently felt that was his only evidence of obstruction. Notwithstanding the fact that appellee's assertion of these rights *cannot* be the basis of a conviction in this case, there is no need to suppress those facts from the jury. If the state's sole evidence of obstruction at trial is appellee's exercise of his Fourth Amendment protection, the trial court must grant a Crim.R. 29(A) motion to acquit. If the state produces other evidence such as that obtained under the plain-view doctrine, *i.e.,* Hamilton's presence in appellee's trailer, etc., then the trial court must instruct the jury as a matter of law that the demand for a search warrant is constitutionally sanctioned conduct that cannot form the basis for a conviction. However, I see no need or basis to suppress appellee's constitutionally protected conduct.

In sum, appellee was entirely justified in exercising his constitutional rights to privacy and he cannot be convicted solely on that basis. However, the conduct or actions which he wishes to conceal by the exercise of that right may form the basis for a conviction. Therefore, *if* conduct which satisfies the elements of R.C. 2921.32(A)(1) was observed through plain view or other legal means,[1] the state may well prevail at trial. Accordingly, I am not convinced that an order of suppression or *in limine* was the proper procedural remedy.

---

1. See, *e.g.,* 1 LaFave, Search & Seizure (2 Ed.1987), Section 2.2(a).