This is an appeal from a judgment of conviction and sentence entered by the Hillsboro Municipal Court, upon a bench trial, finding Rachelle Marie Huff, defendant below and appellant herein, guilty of underage drinking in violation of R.C.4301.632. The following "assignment of error" is posited for our review:
 "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED WITHOUT WARRANT BY ENCROACHMENT OF OFFICERS ONTO THE CURTILAGE AND UPON DOING SO GAINING A POSITION ENABLING THEM TO VIEW INTO THE HOME OF THE APPELLANT THROUGH THE WINDOWS.
 BY UNAUTHORIZED ENTRY INTO THE HOME OF APPELLANT WITHOUT INVITATION, WARRANT, OR THE EXISTENCE OF EXIGENT CIRCUMSTANCES.
 THE TRIAL COURT ERRED IN OVERRULING THE MOTION OF APPELLANT TO SUPPRESS PHYSICAL EVIDENCE SEIZED FROM THE RESIDENCE, AND BY OVERRULING APPELLANT'S MOTION TO SUPPRESS STATEMENTS OF APPELLANT TO OFFICER UPON BEING QUESTIONED WITHOUT MIRANDA WARNINGS, AND AFTER THE OFFICER HAD KNOCKED, ANNOUNCED THEIR PRESENCE, ENTERED AND SECURED THE APPELLANT[']S HOME.
 THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS RENEWED AT TRIAL, INCLUDING THE CONDUCT OF HGN TESTING; AND THE TAKING OF ORAL STATEMENTS. THE COURT FURTHER ERRED IN OVERRULING DEFENSE OBJECTION TO THE EVIDENCE OBTAINED BY UNAUTHORIZED PEEKING THROUGH THE WINDOWS OF APPELLANT'S HOME WHILE IN THE CURTILAGE SURROUNDING THE HOME.
 THE PROSECUTION RELIES UPON THE PLAIN VIEW DOCTRINE IN THE MAKING OF ITS CASE, AND AS FOUNDATION FOR THE OFFICER['] ENCROACHMENT ON THE PROPERTY SURROUNDING APPELLANT'S HOME, AND THE SURREPTITIOUS VIEW THROUGH THE APPELLANT'S WINDOWS AND THE OBSERVATIONS RESULTING FROM SUCH CONDUCT.
 IN STATE V. HOWARD, (App 4 dist 1991) 75 Ohio App.3d 760, 600 N.E.2d 809, OFFICERS WERE ATTEMPTING A TAKING INTO CUSTODY OF ONE HAMILTON ON WHOM THEY HAD A WARRANT TO ARREST. THE SUBJECT WAS IN HOWARD[']S HOME AND WAS SEEN BY THE OFFICERS LOOKING INTO THE HOME THROUGH THE WINDOW. THE COURT REJECTED THIS ARGUMENT, HOLDING THAT ABSENT WARRANT TO SEARCH OR OTHER EXIGENT CIRCUMSTANCES EXCUSING THE WARRANT REQUIREMENT ENTRY WAS BARRED BY THE FOURTH AMENDMENT.
 IN HOWARD SUPRA, THE COURT AFTER SETTING FORWARD THE LANGUAGE OF THE 4TH AMENDMENT, U.S. CONSTITUTION:
 'THE RIGHT OF THE PEOPLE TO BE SECURE IN THEIR PERSONS, HOUSES, PAPERS, AND EFFECTS AGAINST UNREASONABLE SEARCHES AND SEIZURES SHALL NOT BE VIOLATED, AND NO WARRANTS SHALL ISSUE BUT UPON PROBABLE CAUSE, SUPPORTED BY OATH OR AFFIRMATION, AND PARTICULARLY DESCRIBING THE PLACE TO BE SEARCHED AND THE PERSONS OR THINGS TO BE SEIZED.'
 THE 4TH AMENDMENT PROTECTS AGAINST UNREASONABLE GOVERNMENT INTRUSIONS INTO AREAS WHERE LEGITIMATE EXPECTATIONS OF PRIVACY EXIST. UNITED STATES V. CHADWICK (1977) 433 U.S. 1, 97 S.Ct. 2476.
 THE REJECTION OF THE 'VIEW THROUGH THE WINDOW' IN HOWLAND, SUPRA WAS HELD TO BE INSUFFICIENT AS JUSTIFICATION FOR THE ENTRY AND TAKING OF THE APPELLANT IN THE CASE IS OF LARGE ASSISTANCE THEREIN WHERE POLICE OFFICERS HAVE RELIED AN UNAUTHORIZED ENCROACHMENT ONTO THE PROPERTY WHICH APPELLANT HAD A REASONABLE EXPECTATION OF PRIVACY, AND FROM SUCH VANTAGE POINT TO ENGAGE IN LOOKING INTO THE HOME THROUGH THE WINDOW IS EQUALLY SUSPECT. AND THE CLAIM OF RIGHTFUL SEIZING OF EITHER PERSONS OR THINGS BECAUSE OF EXIGENCY IS NOT CLEARLY MADE OUT AND FOR SUCH REASON THE ENTRY, THE QUESTIONING, AND THE SUBJECTION OF APPELLANT TO TESTING ARE ALL EVENTS CLEARLY DENIED THE STATE BY THE 4TH AMENDMENT PROTECTIONS."[1]
The record reveals the following facts pertinent to this appeal. In the early morning hours of May 30, 1998, a dispatch went out from the Hillsboro Police Department concerning possible domestic violence at a residence located on Holmes Street in Hillsboro, Ohio. Three (3) patrolmen, Officers Priest, Reffit and Williams, responded to the dispatch. Officer Priest arrived first on the scene, and he went to the side of the suspected residence (where the "front door" was located) to investigate and see if he could "hear anything." He apparently detected nothing from inside the suspected residence but did hear "a large commotion coming from the back" of the house next door.
Thinking that this might be the location of the suspected domestic violence, Officer Priest investigated. He was joined by Officers Reffit and Williams and all three (3) of them observed, "through the open kitchen window and the open kitchen door window," a number of young people sitting around a table, playing cards and drinking beer.[2] Officer Priest approached the door, knocked and announced that they were Hillsboro policemen. Several of the youngsters inside ran toward the front of the house and, at this point, the officers entered the premises and secured the scene.
Appellant was one of the individuals inside the house. She had an odor of alcohol about her and she admitted to the patrolmen that she had been "consuming" beer that evening just "like the rest of them." Officer Reffit gave appellant a horizontal gaze nystagmus test (hereinafter referred to as "HGN") and, after receiving a positive result, Officer Williams transported her to the Police Department where a breath test was administered. The results of that test showed .058 grams of alcohol in her breath.[3]
Officer Priest filed a criminal complaint on June 1, 1998 charging appellant with underage drinking in violation of R.C.4301.632. She pled "not guilty" to the offense and later moved to suppress all evidence against her claiming that the actions of the police had violated her rights under the Fourth andFifth Amendments to the United States Constitution. Appellant's motion was heard on July 30, 1998 at which time each side recounted their own version of events surrounding this incident. The trial court entered judgment later that same day overruling her motion.
On August 20, 1998 the trial court held a bench trial. There was never any question in this case that appellant had committed the offense for which she had been charged. Joshua Keets, a defense witness, even testified that appellant was among the group at the house that evening who were all "playing cards and drinking some alcohol." Officer Priest also testified that appellant had admitted to him that she had been drinking beer. None of this evidence was ever contradicted. Instead, the focus of the trial centered on the propriety of the actions taken by police. The trial court repeated its decision overruling appellant's motion to suppress evidence and, ultimately, found her guilty. She was given a one hundred eighty (180) day suspended jail sentence, a $100 fine, three (3) years probation and ordered to perform twenty (20) hours of community service. A judgment to that effect was entered the same day and this appeal followed.
The gist of appellant's lengthy assignment of error is that the trial court erred in overruling her motion to suppress evidence. It should be noted at the outset that appellate review of this ruling presents a mixed question of law and fact. See United States v. Martinez (C.A. 11 1992),949 F.2d 1117, 1119; United States v. Mejia (C.A.9 1991), 953 F.2d 461,464-465; United States v. Wilson (C.A.11 1990), 894 F.2d 1245,1254. A trial court assumes the role of trier of fact during proceedings on a motion to suppress. State v. Payne (1995),104 Ohio App.3d 364, 367, 662 N.E.2d 60, 61-62; State v.Robinson (1994), 98 Ohio App.3d 560, 570, 649 N.E.2d 18, 25;State v. Rossiter (1993), 88 Ohio App.3d 162, 166,623 N.E.2d 645, 648. The evaluation of evidence and credibility of witnesses during such proceedings are issues to be determined by the trial court. State v. Smith (1997), 80 Ohio St.3d 89,105, 684 N.E.2d 668, 685; State v. Brooks (1996), 75 Ohio St.3d 148,154, 661 N.E.2d 1030, 1037; State v. Fanning (1982),1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584. A court's factual findings are to be accepted unless they are "clearly erroneous." State v. Long (Apr. 22, 1998), Ross App. No. 96CA2196, unreported; State v. Babcock (Feb. 13, 1997), Washington App. No. 95CA40, unreported; also see UnitedStates v. Lewis (C.A.1 1994), 40 F.3d 1325, 1332. That is to say that a reviewing court is bound to accept the factual determinations of a trial court during a suppression hearing so long as they are supported by competent and credible evidence.State v. Harris (1994), 98 Ohio App.3d 543, 546,649 N.E.2d 779; State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906, 908; also see State v. DePalma (Jan. 18, 1991), Ross App. No. 1633, unreported. The application of the law to those facts, however, is then subject to de novo review.Harris, supra at 546, 649 N.E.2d at 9; State v. Anderson
(1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036; alsosee Lewis, supra 1332; Wilson,supra at 1254. With these principles in mind, we turn our attention to the arguments raised by appellant in her motion to suppress evidence.
Appellant essentially advanced three (3) arguments for suppressing the evidence below. The first of these arguments dealt with the presence of Officers Priest, Reffit and Williams on the premises and their subsequent entry into the home. Appellant asserted that the officers were unlawfully "peep[ing]" into the house and then unconstitutionally entered the home without an invitation, warrant or the existence of exigent circumstances. The second argument she advanced for suppressing the evidence was that the officers never informed her of her constitutional right to remain silent or to refuse to answer questions. Finally, appellant argued that she was never informed of any right to refuse to submit to the HGN or breath test. She concluded that the results of those tests should, likewise, be suppressed. These arguments all raise different issues and will be addressed separately.
We first consider the presence of the patrolmen on the property and their subsequent entry into the home. Our analysis begins with the Fourth Amendment to the United States Constitution which guarantees the rights of people "to be secure in their persons, houses, papers, and effects againstunreasonable searches and seizures[.]" (Emphasis added.) The touchstone of Fourth Amendment jurisprudence is that searches and seizures be "reasonable." See Wilson v. Arkansas (1995),514 U.S. 927, 931; New Jersey v. T.L.O. (1985), 469 U.S. 325,337; also see AL Post 763 v. Ohio LiquorControl Comm. (1998), 82 Ohio St.3d 108, 111, 694 N.E.2d 905,908. The question of whether a warrantless search and entry into a home by peace officers is reasonable requires a careful analysis of the sequential and consequential events leading up to and including the entry. State v. Russell (Apr. 29, 1998), Summit App. Nos. 18206 18207, unreported. It must be determined whether police acted reasonably at each step of the process that led from first contact to ultimate entry and seizure. Id. That being the case, we readily conclude that there was nothing constitutionally infirm about Officers Priest, Reffit and Williams being on the subject property or observing the illegal activity (i.e. underage drinking) taking place therein.
In the instant case the officers responded to a report of suspected domestic violence at a residence on Holmes Street. Officer Priest approached the suspected residence but found nothing to indicate a disturbance therein. He then turned his attention to the house next door from which loud noises could be heard. Thinking that this might be the location of the suspected domestic violence, Priest stood in or around a gravel driveway separating the two (2) houses and observed through the window what appeared to be a number of "underage" individuals drinking alcohol. He and the other two officers then approached the dwelling.
There is no question that police are privileged to go upon private property in the exercise of their duties. State v.Israel (Sep. 26, 1997), Hamilton App. No. C-961006, unreported. The officers in the cause sub judice were investigating a report of domestic violence in the area of these two (2) houses. Such conduct was manifestly within the scope of their official duties and this was not a case of surreptitious "peeping" as appellant would have us believe. Moreover, the illegal activity at issue here (i.e. underage drinking) was clearly visible to the officers from several open windows. This tends to negate any claim of privacy or assertion by appellant that her Fourth Amendment rights were violated. See e.g. Katzv. United States (1967), 389 U.S. 347, 351-352 (Fourth
Amendment protects people not places and what a person knowingly exposes to the public, even in his own home, is not a subject of Fourth Amendment protection); State v. Curto (1991),73 Ohio App.3d 16, 18, 595 N.E.2d 1038, 1040 (no legitimate expectation of privacy when contraband is in a position to be so easily viewed by the public); State v. Cooper (Sep. 26, 1997), Greene App. No. 97-CA-15, unreported (noFourth Amendment violation when evidence is plainly visible to passersby). We therefore find that the officers were lawfully on the premises and were in a position where they could permissibly view the underage drinking.
This brings us to the considerably more problematic question of whether the officers could lawfully enter the premises without a warrant. It is well settled law that theFourth Amendment prohibits warrantless entry into a home to make an arrest unless there is both probable cause and the existence of exigent circumstances. See Payton v. New York (1980),445 U.S. 573; Johnson v. United States (1948), 333 U.S. 10, 13-15;Cleveland v. Shields (1995), 105 Ohio App.3d 118, 121,663 N.E.2d 726, 728; State v. Jenkins (1995), 104 Ohio App.3d 265,268, 661 N.E.2d 806, 808. Assuming for purposes of argument that the officer had probable cause to believe that an underage drinking violation had occurred, we find no "exigent circumstances" justifying the intrusion into the home. We note at the outset that the State bore the burden of establishing exigency from the totality of the circumstances involved. Welshv. Wisconsin (1984), 466 U.S. 740, 750; State v. Sladek (Dec. 31, 1998), Hamilton App. Nos. C-980144 C-980146, unreported;State v. Brooks (Jun. 27, 1995), Franklin App. No. 94APA03-386, unreported. The State argues in its brief that it met that burden by establishing (1) that the officers were in "hot pursuit" of suspects as they attempted to flee the scene, (2) that the evidence was "easily destructible" and (3) that the officers were witnessing the crime (i.e. underage drinking) as it was taking place. We are not persuaded by any of these.
It is true that one of the exigent circumstances justifying a warrantless entry into a home is when police are in "hot pursuit" of a fleeing suspect. See United States v. Santana
(1976), 427 U.S. 38, 42-43; Warden v. Hayden (1967),387 U.S. 294. The reasoning behind the "hot pursuit" exception to the warrant requirement is that a person should not be able to avoid arrest simply by feeing from a public place to a private place. See Shields, supra at 121-122;663 N.E.2d at 728; State v. Lomak (Mar. 11, 1999), Franklin App. No. 98AP-708, unreported. This exception has no bearing on the present case, however, because the suspects were already in the house. The suspects did not flee inside from an outside location. A "hot pursuit" scenario simply does not exist when the suspect is already in a private dwelling. See e.g. State v.Howard (1991), 75 Ohio App.3d 760, 774, 600 N.E.2d 809, 819. Moreover, if the officers were concerned about the suspects escaping from inside, they could have stood guard at the exits to that house and achieved the same results without violating the sanctity of the residence. We therefore reject the argument that the officers were in "hot pursuit" of these offenders.
We are equally unpersuaded by the State's arguments that the evidence was "easily destructible." A warrantless entry into a residence may be justified in some circumstances in which evidence is in danger of being removed or destroyed in the amount of time it would take police to obtain a warrant. Katz, Ohio Arrest, Search and Seizure (1998 Ed.) 171, § T10.02; alsosee State v. Hickson (1990), 69 Ohio App.3d 278, 280,590 N.E.2d 779, 781. However, we cannot conclude that this was the case here. The evidence which first prompted the officers to believe that a crime was being committed was the sight of underage individuals drinking from beer cans. Photographic evidence of those containers was even introduced below. It goes without saying that an aluminum beer can is not going to be as easily disposed of as would a controlled substance or something of that nature and, even if it could, that disposal would not alter the fact that the officers had seen them and could testify to their existence. Moreover, the State also relied on appellant's performance on the HGN and the breath test to prove that she had been drinking alcohol. It would have been nearly impossible for appellant to have disposed of the alcohol content in her body or the other available evidence prior to a warrant being obtained. We therefore conclude that exigent circumstances did not exist which could have justified a warrantless intrusion.
The State's final argument is that exigent circumstances existed because the officer's witnessed a crime (underage drinking) being committed. Again, we are not persuaded. The United States Supreme Court in Welsh, supra at 752, indicated that the gravity of the underlying offense is an important factor to be considered in deciding if an exigency exists. However, the Court refused to apply the exigent circumstances exception to the warrant requirement where the police entered a suspect's home to arrest him for a non-criminal traffic offense. Id. at 753. That holding has been interpreted as limiting exigent circumstances to serious crimes not including misdemeanors. See Shields, supra at 122, 663 N.E.2d at 728;State v. Trammel (Jan. 22, 1999), Montgomery App. 17196, unreported. We agree and have, ourselves, previously indicated that observation of underage drinking by law enforcement officers does not give rise to exigent circumstances sufficient to contravene the warrant requirement of the Fourth Amendment.See State v. Nealon (Jan. 11, 1999), Athens App. No. 98CA22, unreported. The State's reliance on this factor as justification for entering the premises in this case is therefore misplaced.
In summary, this Court concludes that no exigent circumstances existed that would have allowed for a warrantless entry in the cause sub judice. Such entry was therefore unreasonable and in violation of the Fourth Amendment to the United States Constitution. Having so concluded, we need not reach appellant's other arguments.
The proper remedy for unreasonable entry into this home is to exclude from use at trial any evidence obtained by police subsequent to that entry. See generally United States v.Calandra (1974), 414 U.S. 338, 347; also see State v. Robinson
(1995), 103 Ohio App.3d 490, 494, 659 N.E.2d 1292, 1294. Thus, we believe that the trial court erred in overruling appellant's motion to suppress and her assignment of error is sustained to this extent. Further, in view of Officer Priest's testimony that appellant could not be seen through the open windows committing the offense (because she was "against the wall . . . between the window and the door") and no other evidence supports her conviction for violating R.C. 4301.632, appellant is therefore discharged from that crime.
Accordingly, the trial court's judgment of conviction and sentence is reversed and the appellant is discharged.
JUDGMENT REVERSED.[4]
[1] Assignments of error should be "precise." Whiteside, Ohio Appellate Practice (1999 Ed.) 93, § T 5.13. Suffice it to say that the one posited by appellant herein does not satisfy that standard. We also note that this "assignment of error" should have been listed on a separate page in the brief, Id., that the table of authorities in the brief should have been arranged alphabetically, App.R. 16(A)(2), that the brief should have contained a "statement of the issues," Id. at (A)(4), as well as a statement of facts, Id. at (A)(6) and a conclusion. Id. at (A)(7). Nevertheless, given that we have already stricken one of appellant's briefs for failure to comply with state and local rules of appellate procedure, see entry dated December 16, 1998, we will proceed to consider this one.
[2] This house, located at 117 Holmes Street in Hillsboro, Ohio, was the residence of Roy and Rosie Neu. Officer Priest was "familiar" with their two (2) sons, Brian and Randy, and knew that Brian was a juvenile. The other people in the kitchen also appeared to him to be under the age of twenty-one (21).
[3] Materials contained in the original papers indicate that appellant was born on May 18, 1978 and was thus only twenty (20) years old at the time of this incident.
[4] We acknowledge that the court below also had problems with the propriety of the search in this case and indicated, at trial, that it might have sustained the motion to suppress were it not for the fact that appellant was neither "an owner or occupant" of the dwelling. This Court declines to find a lack of standing, however, because (1) it is not apparent to us that the State ever raised this issue below, and (2) other materials in the record indicate that appellant was living with her boyfriend and his parents at the residence at that time.