THE STATE OF OHIO, APPELLEE, *v.* HOUGH, APPELLANT.

(No. C-74577—Decided April 5, 1976.)

*Mr. Simon L. Leis, Jr., Mr. Robert R. Hastings, Jr.,* and *Mr. Fred J. Cartolano,* for appellee.

*Messrs. Gilday, Jung & Gilday* and *Mr. Ronald H. Stern,* for appellant.

*Messrs. Anninos & Goodman,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County; the transcript of the proceedings; and the assignments of error, the briefs and arguments of counsel.

In the early morning hours of December 18, 1973, the Taft Museum, located in Cincinnati, Ohio, was robbed by three men, one of whom held a guard at gunpoint. Two paintings by Rembrandt, entitled "Portrait of an Elderly Woman" and "Man Leaning on a Sill," were stolen. The two actual thieves, Henry Dawn and Carl Horsley, accompanied by Raymond McDonough, who drove the getaway car, thereafter proceeded to flee from the Cincinnati area.

Later that morning and periodically throughout the next day, the thieves initiated and maintained telephone contact from different points in Ohio with one Donald Johnson, a confessed professional thief and an acquaintance of the appellant herein, James Hough, Jr. The admitted purpose of the phone calls was to attempt to "fence" or otherwise dispose of the paintings and convert them into cash.

To this end, Johnson contacted the appellant, with whom Johnson had allegedly had prior dealings in the context of selling stolen property, and suggested that they meet and reach some type of agreement regarding the paintings. For the next several days, through December 22, 1973, the appellant negotiated with a trustee of the Taft Museum, Johnson and, later, Horsley for the ransoming of the paintings.

On December 20, 1973, as a gesture of "good faith" on the part of the thieves, the appellant was informed of the location of "Portrait of an Elderly Woman," and this painting was recovered and turned over to the authorities.

Thereafter, negotiations continued and a final sum of $100,000 was agreed upon. The appellant received the money from the museum authorities and deposited it pursuant to instructions received from the thieves. The second painting was recovered shortly thereafter.

Within several hours of the payment of the ranson and the recovery of the second painting, and pursuant to the combined efforts of federal, state and local authorities, the three thieves were apprehended and the ransom money returned nearly intact.

During the interrogation of Dawn, Horsley and McDonough, Donald Johnson was implicated. Johnson subsequently implicated the appellant, whereupon the Hamilton County Grand Jury returned a three-count indictment which charged the appellant with harboring a felon, extortion and receiving stolen property.

The cause was tried to a jury which, after a lengthy trial, found the appellant guilty as charged. The appellant was sentenced according to law and thereafter timely initiated this appeal from the judgment entered against him.

In the first of his five assignments of error, the appellant maintains that he was prejudiced by remarks made by the prosecutor to the jury during closing arguments. The remarks allegedly pertained to appellant's failure to testify in his own behalf. Appellant also contends that a specific statement by the court uttered while instructing the jury resulted in substantial prejudice.

The appellant directs our attention to several "examples" of the prosecution having referred to appellant's failure to testify. The record reveals that the prosecutor stated: "And again, the uncontroverted testimony, the uncontroverted testimony in this case from Sandlin and Johnson, there's nothing to controvert it." "It's uncontroverted here, there is nothing in this evidence, in this record, to say that it didn't happen."

Such examples are couched in terms of "uncontroverted testimony" and clearly relate solely to matters not placed in controversy by the instant proceedings, pertaining, rather, to matters that were otherwise admitted or inde-

pendently demonstrated. We have examined the prosecutor's remarks in the context in which they were spoken, and we conclude that to accord to these widely separated references the stigma of prosecutorial misconduct prejudicial to the appellant would be to defy credulity and to ascribe to a jury an unrealistic degree of sophistication as to the subtle nuances of the law.

In charging the jury, the trial court stated: "The testimony of the defendant, James Hough, Jr., is to be weighed by the same rules that apply to other witnesses." Inasmuch as the appellant clearly did not testify, the appellant contends that the court's remark could only have served to focus the jury's attention upon such fact. We hold, however, that, taken in context, the trial court's remark was a mere inadvertance, and as such resulted in no prejudice to the appellant. We conclude from the foregoing that appellant's first assignment of error is not well taken.

The appellant argues in his second assignment of error that the trial court erred in refusing to either voir dire the unsequestered jurors or appropriately instruct them relative to several "inflammatory" news articles pertaining to this case which appeared in local newspapers during the course of the trial. Our examination of the record, however, reveals that such news articles were never made a part of the exhibits herein. It follows that since such alleged error is not manifest upon the face of the record, this assignment of error must be overruled.

The thrust of appellant's third assignment of error is that the trial court erred in allowing the prosecution to adduce evidence to establish the existence of a conspiracy in which, arguably, the appellant, along with Johnson and the three thieves, was involved, and that the court further erred to the prejudice of the appellant in admitting hearsay evidence elicited from Johnson and the actual theives, which testimony tended to implicate the appellant.

Clearly, hearsay testimony relating to conversations between participants in a conspiracy is admissible once the proper groundwork has been fashioned. 15A Ohio Jurisprudence 2d 317, Criminal Practice and Procedure, Section

268; 10 Ohio Jurisprudence 2d 75, Conspiracy, Sections 24, 25.

The testimony of the three thieves was properly admitted to establish the prerequisite showing that a theft had occurred, and there is, in fact, no dispute that the paintings were stolen from the Taft Museum. The record in the instant case reveals and Johnson so admitted that he actively participated as an aider and abettor in a plan to both receive the Rembrandts and dispose of them. In this regard, he contacted the appellant and arranged to meet with him to discuss a suitable plan to convert the paintings into cash.

The conclusion is inescapable that in covertly entering into negotiations with Johnson to ''fence'' the paintings, the appellant was aware that Johnson would in time receive the stolen goods. It follows that when the appellant agreed to assist Johnson and had conversations with him to that effect, such conversations became a part of the *res gestae* of the conspiracy to receive stolen goods.

When, pursuant to instructions, the appellant actually picked up "The Portrait of an Elderly Woman," he became a principal in the crime of receiving stolen property. Therefore, Johnson's repetition of appellant's statements is permissible insofar as such statements are relevant and material to establish scienter—*i. e.*, that appellant intentionally received goods known by him to have been stolen. Clearly, the appellant knew of the thieves efforts to convert the paintings and he furthered these efforts by his own independent acts.

We hold that the disputed testimony, taken as a whole, does no more than establish first, that a conspiracy relating to receiving stolen goods and extortion, existed, and second, set forth the appellant's substantial participation in that conspiracy. Therefore, the trial court did not err in ruling that such hearsay testimony was admissible. The third assignment of error is not well taken.

The appellant next argues that the trial court erred in refusing to instruct the jury regarding Johnson's original concededly perjurious testimony before the Grand Jury and the weight to be afforded his testimony before the trial

court. After enunciating the factors to be considered by the jurors in determining the weight and importance to be ascribed to the testimony of each of the witnesses, the court instructed the jury as follows:

"Applying these tests you will assign to the testimony of each witness such weight as you deem proper. You are not required to believe the testimony of the witness simply because he was under oath. You may believe or disbelieve all or any part of the testimony of any witness. It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief."

Having examined the court's instructions to the jury, we find them to be in substantial compliance with the laws of Ohio. We perceive, moreover, no prejudice in the court's refusal to charge the jury as requested by the appellant since appropriate instructions relative to credibility had already been rendered. We conclude accordingly that the court in no way abused its discretion. This assignment of error is meritless.

The appellant maintains in his fifth assignment of error that:

"The trial court committed reversible error by refusing to instruct that in order for the appellant to be guilty of harboring a felon, they must find that he committed an overt act designed to impede the arrest of one sought by the authorities for the commission of a felony."

R. C. 2921.32, provides, in pertinent part:

"(A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime, or to assist another to benefit from the commission of a crime, shall do any of the following:

(1) Harbor or conceal such other person * * *."

Appellant appears to argue that inasmuch as he did not "house" Johnson or otherwise physically shelter him from the actual view of the investigative authorities, he was entitled to an instruction placing such an interpretation on the word "harbor." We do not agree that "harboring a felon" has such a limited meaning.

The record reveals that upon several different occa-

sions, the appellant was asked whether he was aware of the identity of anyone involved in the scheme to steal and ransom the paintings. The appellant repeatedly replied in the negative. There is in the record substantial and probative evidence to establish that when the appellant made such denials to his interrogators he was deliberately misleading them. The effect of the falsehoods uttered by Hough was to temporarily frustrate police efforts to recover the stolen paintings and to apprehend the culprits in the conspiracy.

While appellant would have us conclude that such a response to direct qustioning does not constitute an "overt act" so as to amount to harboring, we conclude, to the contrary, that appellant's denial of any knowledge as to Johnson's identity was *just* such an affirmative act, an "overt act," as would be designed to "* * * hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime * * *" and as such, clearly constituted "harboring a felon." We hold that where a person intentionally deceives one who is attempting to discover and apprehend another, for the purpose of prosecuting him for a crime, by the use of verbal statements that impede or delay such discovery and apprehension, that person has harbored the fugitive just as surely as if he had concealed him physicially.

It follows that the trial court did not err in refusing to instruct the jury as requested by the appellant. The fifth assignment of error is without merit.

The judgment of the Court of Common Pleas of Hamilton County is affirmed.

SHANNON, P. J., and PALMER and KEEFER, JJ., concur.