OPINION
{¶ 1} Defendant-appellant, Laura Cooper, appeals her conviction in Ashtabula Municipal Court of obstructing justice. For the following reasons, we affirm the decision of the court below.
 {¶ 2} In the early morning hours of June 3, 2003, Patrolman Thomas P. Perry of the Ashtabula Police Department was on routine patrol on Station Avenue. Perry observed Luis Cruz in the front yard of 4012 Station Avenue, the residence of Laura Cooper. At 12:52 a.m., Perry radioed dispatch to confirm the existence of an active warrant for Cruz' arrest. Perry also radioed for transport as Perry was operating the canine unit and was unable to transport prisoners. Perry parked and exited his patrol car and advised Cruz that there was a warrant for his arrest. Cruz fled inside the house despite being told several times by Perry to stop. Perry radioed for backup.
 {¶ 3} Perry banged on the door advising that he had a warrant for Cruz' arrest. According to Perry, Cooper's two daughters, June and Julia, were at the door hollering back that Perry was lying about the warrant. Then Cruz unlocked and opened the door. June and Julia, however, blocked Perry's access to Cruz and continued hollering at him.
 {¶ 4} At this point, Cooper arrived and forced her way past Perry and took her daughters' place in the doorway between Cruz and Perry. Perry advised Cooper several times to step away from the door because she was blocking access to Cruz whom he had a warrant to arrest. Cooper refused to yield, yelled insults at Perry, and accused Perry of lying about the warrant. Perry did not attempt to gain entry to the residence by himself because of the hostility of the occupants of the residence and because he was holding the leash for the police dog.
 {¶ 5} At about 12:55 a.m., Patrolmen Will Parkomaki and Sherri Collins arrived. Parkomaki and Collins found Cooper confronting Perry in the doorway. Cooper was told several more times that the police had an arrest warrant for Cruz and that she would be arrested if she continued to hinder them from executing the warrant. After a few minutes, Parkomaki physically removed Cooper from the doorway. Parkomaki, Perry, and other officers who had arrived entered the residence. Cruz was apprehended without resistance. The police also arrested Cooper and her two daughters for obstructing justice.
 {¶ 6} According to Cooper and June, Cooper did not arrive at the residence until after Cruz was apprehended and removed. Cooper testified that she was unable to make her way past the police officers and enter her residence until after Cruz' removal. Prior to entering, Cooper yelled for someone in the house to get the video camera and record the incident. The resulting video tape begins after Cruz' removal. It depicts June and Julia being allowed to get dressed and to put on shoes before being taken to jail. Cooper is also present in the video continuing to abuse Perry. Cooper and June denied that they hindered the officers from arresting Cruz. June was convicted of obstructing justice in a separate juvenile proceeding.
 {¶ 7} Cooper's case was tried to a jury on December 10 and 13, 2003. The jury found her guilty of obstructing justice, a misdemeanor of the first degree in violation of R.C.2921.32(A)(1). Cooper was sentenced to ninety days in jail and ordered to pay a $1,000 fine plus court costs, with $500 of the fine suspended provided she completes one year of supervised probation. This appeal timely follows. Cooper's sentence has not been stayed pending appeal.
 {¶ 8} On appeal, Cooper raises the following assignments of error:
 {¶ 9} "[1.] Trial counsel rendered constitutionally deficient assistance in violation of appellant's constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 {¶ 10} "[2.] The trial court erred to the prejudice of defendant-appellant in denying the motions for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure.
 {¶ 11} "[3.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 12} Regarding Cooper's first assignment of error, the Ohio Supreme Court has adopted a two-part test to determine whether an attorney's performance has fallen below the constitutional standard for effective assistance. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v.Madrigal, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, citingStrickland v. Washington (1984), 466 U.S. 668, 6876-88. Courts will indulge a strong presumption that trial counsel rendered constitutionally effective assistance. State v. Thompson
(1987), 33 Ohio St.3d 1, 10, quoting Strickland,466 U.S. at 689 ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). The failure to prove any one prong of this two-part test makes it unnecessary for a court to consider the other prong. Madrigal, 87 Ohio St.3d at 389, citing Strickland,466 U.S. at 697.
 {¶ 13} Cooper argues that trial counsel was constitutionally ineffective for failing to exercise peremptory challenges against certain jurors who have or had personal relationships with the prosecutor and for failing to vigorously cross-examine the State's witnesses regarding Cooper's conduct which allegedly constituted "harboring" or "concealing" a suspect.
 {¶ 14} Regarding the first argument, Cooper has failed to demonstrate that she was prejudiced by trial counsel's failure exercise peremptory challenges against jurors having a "personal relationship" with the prosecutor. During voir dire, three jurors were found to be acquaintances of the prosecutor. One juror had gone to school with the prosecutor for about eleven years. Another juror sat on the local YMCA board with the prosecutor but, otherwise, was not "close friends" with the prosecutor. A third juror had been "on the other side of a case" in which the prosecutor was involved. The jurors' responses to the prosecutor's inquiry as to whether they felt their relationship with the prosecutor would prevent them from being fair and impartial were not recorded. The transcript provided this court reports the jurors' responses as "(Inaudible)."
 {¶ 15} The trial court, directly addressing all the jurors, asked whether anyone had "a close personal relationship with any of the parties or the attorneys." The transcript records a negative response. The trial court also directly queried the jurors whether anyone felt they would hold the litigants to a lesser standard than the one required by law "by virtue of relationships" with either of the attorneys of the court.[1] The transcript records "no answer" from any of the jurors.
 {¶ 16} Nothing in the transcript suggests that any of these three jurors were biased in their judgment or in the performance of their duties as jurors as a result of their acquaintance with the prosecutor. Although the jurors' individual responses to the prosecutor's queries on this issue were not recorded, this fact does not establish prejudice. It is the appellant's responsibility to supplement the record, pursuant to Appellate Rule 9, when anything necessary for the resolution of the assigned errors is omitted from the transcript. State v. Skaggs
(1978), 53 Ohio St.2d 162, 163 ("the burden to show the relevance of omissions or deficiencies must be placed upon appellant within the framework of claimed error"). "When portions of the transcript necessary for resolution of assigned errors are omitted from record, the reviewing court * * * has no choice but to presume validity of the lower court's proceedings, and affirm." Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199.
 {¶ 17} We also note that defense counsel is not required to exercise peremptory challenges to remove potential jurors merely because they are the casual acquaintance of the prosecutor, particularly where, as in the present case, there is no indication of bias as a result of the acquaintance.
 {¶ 18} Cooper's second argument is also without merit. The testimony of patrolmen Perry, Parkomaki, and Collins was consistent on the essential act of "harboring" or "concealing" a suspect: Laura Cooper was advised that there was an active warrant for Cruz' arrest; by standing in the doorway and refusing to yield, she prevented officers from effecting the arrest of Cruz; it was necessary to physically remove her from the doorway in order to gain access to Cruz. Cooper's trial counsel effectively cross-examined the officers and attempted to impeach their testimony on certain collateral issues, such as the time of each officer's arrival at 4012 Station Avenue and whether any of the assisting officers arrived at the residence before Cooper. On the issue of whether Cooper was taken into custody before or after Cruz, however, the officers' testimony was consistent. Further cross-examination on this point would not have changed the responses.
 {¶ 19} Cooper's first assignment of error is without merit.
 {¶ 20} Cooper's second and third assignments of error challenge her conviction on the grounds of sufficiency and manifest weight of the evidence. In order to convict Cooper of obstructing justice, the State was required to prove, beyond a reasonable doubt, that Cooper, "with purpose to hinder the * * * apprehension * * * of another for crime," did "harbor or conceal the other person * * *." R.C. 2921.32(A)(1). A person acts purposefully "when it is [her] specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is [her] specific intention to engage in conduct of that nature." R.C. 2901.22(A).
 {¶ 21} The Ohio Rules of Criminal Procedure provide that a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Crim.R. 29(A). "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury," i.e. "whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, quoting, Black's Law Dictionary (6 Ed. 1990), 1433. Essentially, "sufficiency is a test of adequacy," that challenges whether the state's evidence has created an issue for the jury to decide regarding each element of the offense. Id.
 {¶ 22} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 319; Statev. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *14. In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 23} Cooper argues that the State's evidence that Cooper was hollering and screaming accusations and calling Perry a liar "does not constitute a necessary act to satisfy the element of `harboring' or `concealing.'" We disagree.
 {¶ 24} The State does not argue that the conduct constituting "harboring or "concealing" was Cooper's hollering and screaming, but, rather, her act of blocking the doorway so that the police could not enter the residence to apprehend Cruz. "Harboring or concealing requires an overt act that does in fact hinder the discovery of apprehension of the person sought by the police."State v. Blackson (Feb. 26, 1997), 9th Dist. No. 17971, 1997 Ohio App. LEXIS 636, at *6; accord State v. Davis (Sept. 28, 2000), 10th Dist. No. 99AP-1428, 2000 Ohio App. LEXIS 4429, at *15-*16 (and the cases cited therein). Cooper blocked the doorway to her residence, thereby hindering the apprehension of Cruz until she could be forcibly removed. This conduct is sufficient to support a conviction of obstructing justice. State v.Claybrook (1978), 57 Ohio App.2d 131, 133-134 (hindering police from apprehending a suspect by blocking officers' entrance to the apartment where suspect had fled constitutes obstructing justice).
 {¶ 25} Although Cooper denies that she ever prevented or hindered officers from entering her residence, for the purposes of determining the sufficiency of the evidence, the evidence of the officers' testimony must be considered in a light most favorable to the prosecution.
 {¶ 26} Cooper's second assignment of error is without merit.
 {¶ 27} Weight of the evidence, in contrast to its sufficiency, involves "the inclination of the greater amount ofcredible evidence." Thompkins, 78 Ohio St.3d at 387 (emphasis sic) (citation omitted). Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. Thomas (1982),70 Ohio St.2d 79, at syllabus. When reviewing a manifest weight challenge, however, the appellate court sits as the "thirteenth juror." Thompkins, 78 Ohio St.3d at 387 (citation omitted). The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to determine whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 28} Cooper argues her conviction is against the manifest weight of the evidence because there was no evidence from which a jury could conclude that Cooper acted purposefully or that her actions constituted "harboring" or "concealing."
 {¶ 29} As discussed above, the act of hindering the police from entering her residence to arrest Cruz constitutes harboring or concealing. Cooper and her daughter, June, testified that Cooper never prevented the police from entering her residence. The jury chose to believe the testimony of the police officers. As often when there is conflicting testimony in the record, we defer to that judgment. State v. Jaryga, 11th Dist. No. 2003-L-023, 2005-Ohio-352, at ¶ 104 ("the credibility of the witnesses, both those of the state and appellant himself, were critical issues for the jury to decide, and this court will not disturb those findings on appeal unless the testimony in question was completely lacking in credibility").
 {¶ 30} A person acts purposefully when it is their specific intention to cause a certain result or to engage in conduct of the sort of which it is the gist of the offense to prohibit. R.C.2901.22(A). Cooper's conduct on June 3, 2003, appears to have been motivated as much by an intense dislike or distrust of Officer Perry as by a desire to conceal Cruz from the police. Regardless of her motivation, Cooper could be found guilty of obstructing justice as long as it was her intention, as it clearly was, to hinder the execution of the warrant for Cruz' arrest. Hindering the execution of a warrant is the sort of conduct which the offense of obstructing justice prohibits.Claybrook, 57 Ohio App.2d at 135 ("[i]t is the act of harboring or concealing with the purpose of hindering his discovery or apprehension that constitutes the crime"). The officers' testimony leaves no doubt that Cooper, by preventing the police from entering her residence until she was forcibly removed, intended to hinder their access to Cruz. Cooper had been advised repeatedly that an active warrant existed for Cruz' arrest and that the sole purpose of the officers' presence on her property was to execute that warrant. Accordingly, her conviction is not against the manifest weight of the evidence.
 {¶ 31} Cooper's third assignment of error is without merit.
 {¶ 32} For the foregoing reasons, Cooper's conviction of obstructing justice before the Ashtabula Municipal Court is affirmed.
O'Neill, J., Rice, J., concur.
[1] Several of the jurors were also acquaintances of the trial judge and defense counsel as well.