[Cite as *State v. Blanton*, 2015-Ohio-4620.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,                                    CASE NO. 9-15-07

    PLAINTIFF-APPELLEE,

    v.

BOBBIE NICOLE BLANTON,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court

Trial Court No. 14-CR-249

Judgment Affirmed

Date of Decision:  November 9, 2015

APPEARANCES:

    *Kevin Collins* for Appellant

    *Raymond A. Grogan Jr.* for Appellee

**ROGERS, P.J.**

{¶1} Defendant-Appellant, Bobbie Blanton, appeals the judgment of the Court of Common Pleas of Marion County convicting her of obstructing justice and sentencing her to 18 months of community control. On appeal, Blanton argues that the trial court erred by (1) entering a verdict that was not supported by sufficient evidence; (2) entering a verdict that was against the manifest weight of the evidence; (3) allowing the prosecutor to ask improper questions to potential jurors during voir dire; and (4) refusing to use Blanton's suggested jury instructions. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On May 28, 2014, the Marion County Grand Jury returned a one count indictment against Blanton charging her with one count of obstructing justice in violation of R.C. 2921.32(A)(1), a felony of the fifth degree. Blanton pleaded not guilty to the charge.

{¶3} On August 14, 2014, Blanton filed a motion to dismiss the charge[1] and suppress any and all evidence that was obtained by law enforcement officials. She withdrew her motion to suppress on October 9, 2014.

{¶4} The matter proceeded to a jury trial on October 28, 2014 and lasted for two days. During voir dire, the prosecutor asked the potential jurors, "Okay. Generally speaking, if I were to say that - - Would you generally agree that people

---

[1] Because there is no indication in the record that the trial court ruled on Blanton's motion to dismiss before proceeding to trial, we presume the court overruled it. *Georgeoff v. O'Brien*, 105 Ohio App.3d 373, 378 (9th Dist.1995).

-2-

who lie to police officers should be prosecuted for that?" Oct. 28, 2014 Trial Tr.., p. 23. Blanton's counsel objected to this question on the grounds that it went to an ultimate issue of the case. The trial court overruled the objection. Next, the prosecutor asked, "Does everybody agree that people who lie to a police officer should be prosecuted for that? Any - - I need a yes or no. Generally speaking yes, okay? All right. Does anybody hold the opinion if somebody lies to a police officer, it's just part of the police officer's job, and they have to deal with?" *Id.* at p. 24. Again, Blanton's counsel objected and requested a continuing objection regarding this line of questioning. The court proceeded to overrule the objection. After the jury was impaneled, Blanton's counsel moved for a mistrial based on the prosecutor's improper line of questioning, which was denied.

**{¶5}** Jason Peterson was the first witness to testify on behalf of the State. Peterson testified that he works for the Marion Municipal Court as a deputy bailiff. As part of his normal day to day duties, Peterson stated that he works in the clerk's office. Peterson identified a felony complaint for a Mr. William Blanton ("William"), which charged William with one count of domestic violence, a felony of the fourth degree. Peterson also identified a felony arrest warrant in William's name. In the warrant, William was described as being five foot five inches tall, 140 pounds, with blonde hair and blue eyes. Both the complaint and warrant were later admitted into evidence.

{¶6} Julie Kagel was next to testify. Kagel testified that she was the Marion County Clerk of Courts and had been so for approximately 15 years. Specifically, she was responsible for keeping the records for the county common pleas court's general and criminal divisions. Kagel identified a judgment entry of sentencing out of the Common Pleas Court of Marion County, which was filed on July 21, 2014. The entry stated that William was found guilty of one count of domestic violence. The entry was later admitted into evidence.

{¶7} Officer Rob Musser of the Marion Police Department was the next witness to testify on behalf of the State. Officer Musser testified that he was working on May 22, 2014. On that evening, Officer Musser stated that he went to 767 W. Center St. in Marion, Ohio to arrest William. He explained that the Center Street address was the one listed on the arrest warrant. Officer Musser testified that he and two additional officers, Officer Kindell and Lieutenant Bayles, all arrived at the house at the same time.

{¶8} Upon arriving at the address, Officer Musser stated that he went to the southwest side of the house, where the back door was located. He added that Blanton exited out the back door and the two engaged in a conversation. Officer Musser testified that he informed Blanton that they were there to arrest William. He also asked Blanton if William was in the house, and she replied no. Officer Musser added that he asked Blanton if she knew of William's whereabouts, and she indicated that he was somewhere on a nearby street. Blanton also told Officer

Musser that she was alone in the house at that time. Officer Musser testified that he explained to Blanton that she would be charged with obstructing justice if William was in the house, and Blanton indicated that she understood. After the conversation, Officer Musser stated that Blanton returned to the house. Officer Musser testified that he was informed that one of the other officers had seen an individual matching William's description in the house while Officer Musser and Blanton were talking.

{¶9} Officer Musser testified that ultimately the decision was made to enter the house. However, they waited approximately 45 minutes for the dog warden to show up because the officers observed large dogs inside the house that appeared to be aggressive. Officer Musser explained that periodically he or one of the other officers would knock on the door and say "William, come out. We know you're in there." *Id.* at p. 138.

{¶10} Once the dog warden arrived, Officer Musser stated that they breached the house through a back garage door. He testified that William came out and was arrested.

{¶11} On cross-examination, Officer Musser testified that Blanton refused to allow the officers into her home and demanded to see a warrant. Officer Musser admitted that he never showed Blanton any kind of warrant. Further, he added that had the dogs not been there, then the officers would have gone into the house right after the decision to breach was made. He also admitted that Blanton

in no way hindered them from entering the home. Rather, any delay was only caused by the concern of the dogs.

{¶12} Officer Michael Kindell of the Marion Police Department was the next witness to testify. Officer Kindell testified that he was working on May 22, 2014, when he was dispatched to 767 W. Center Street to assist Officer Musser. He stated that both Officer Musser and Lieutenant Bayles were at the scene when he arrived. Officer Kindell explained that he was responsible for securing the west side of the house to make sure no one tried to escape from that side. From his position, Officer Kindell was able to see the inside of the house through a window. He testified that the lights were on inside the house, which allowed him to see clearly into the house.

{¶13} While looking through the window, Officer Kindell stated that he observed an individual matching William's description. Specifically, he testified that "The physical description of William was a very short man with short blondish hair. And that's exactly the description of the male that was sitting there." *Id.* at p. 168. He then relayed this information to Lieutenant Bayles. Officer Kindell added that he observed Blanton walk directly past William after her conversation with Officer Musser concluded.

{¶14} At the conclusion of Officer Kindell's testimony, the State rested. Afterwards, Blanton's counsel moved for an acquittal pursuant to Crim.R. 29. The motion was overruled by the trial court.

{¶15} Jeffrey Reed was the first witness to testify on behalf of Blanton. Reed testified that he was employed by the Marion County Adult Probation Department and served as a cognitive behavior therapy specialist. He added that he "teach[es] thinking for change classes and [the department's] victim awareness class and [he] also do[es] some intensive supervision." *Id.* at p. 195. Reed stated that he had previously supervised William.

{¶16} Reed explained that if a probationer wanted to leave the state of Ohio then he or she would have to contact the probation department for approval. He testified that William was granted several travel permits that allowed William to drive to Kentucky to work.

{¶17} William was the next witness to testify. William testified that he was currently incarcerated due to his conviction for felony domestic violence. He explained that the conviction stemmed from a May 10, 2014 incident. After the altercation, William explained that he traveled down to Kentucky for work.

{¶18} While in Kentucky, William stated that he received a phone call from Blanton telling him that he needed to come back to Marion to face the felony domestic violence charge. He added that no one else contacted him regarding the charge and that Blanton convinced him to return and turn himself in to police. William testified that he went to the 767 W. Center Street address on the night of May 22, 2014 to talk to Blanton about the domestic violence charge.

{¶19} On cross-examination, William admitted that he told Officer Kindell on the night of the domestic violence incident that he was living at 767 W. Center Street with Blanton. William clarified that by "living" he meant that he would spend several nights a week at Blanton's. He also claimed that there was no way Officer Kindell could have seen him inside the house the night he was arrested. William stated that after Blanton finished talking with Officer Musser she told William that the police were looking for him. In addition to the domestic violence charge, William admitted that he had been convicted of possession of cocaine and burglary.

{¶20} Tonya Rischel was the next witness to testify on Blanton's behalf. Rischel testified that she was a legal assistant for attorney Tom Matthews. Her responsibilities included "tak[ing] care of answering phones, faxes, E-mailing, typing documents, filing." *Id.* at p. 219. Rischel testified that Blanton had made an appointment to see Matthews on May 23, 2014 regarding William. She stated that Blanton had previously called to make an appointment for William to see Matthews on May 19, 2014, but she later had it rescheduled to the May 23 date.

{¶21} Gwen Chestnut was the next witness to testify. Chestnut stated that she was employed by the Marion County Prosecutor's Office and worked as a victim advocate. She testified that she was assigned to be Blanton's advocate in the domestic violence case. Chestnut stated that she met with Blanton on at least two occasions to discuss the case. She explained that Blanton wanted a civil

protection order, previously issued against William and listing her as the victim, terminated.[2] Additionally, Blanton expressed her wishes that they could come up with a way for William to turn himself into police so he would not lose his job.

{¶22} Bailey Witzell was the next witness to testify. Witzell testified that she is Blanton's daughter and currently lives with Blanton. She explained that William is not her biological father, but rather her stepfather. Witzell testified that she accompanied her mother to the meeting with Chestnut. She stated that during this meeting Blanton kept "[a]sking how does [Blanton] help to get William back and turn him in to his attorney the next day, if the charges would get dropped in the [civil protection order.]" *Id.* at p. 240. She added that Blanton owns two dogs: a pit bull and a pit bull/boxer mix.

{¶23} Officer Chris Walker of the Marion City Police Department was the last witness to testify. Officer Walker testified that his primary responsibility was to serve as a dispatcher. He stated that he was working on May 22, 2014. Officer Walker testified that all the officers involved in the arrest of William arrived at the scene separately, but within 10 minutes or so from each other.

{¶24} At the conclusion of Officer Walker's testimony, Blanton rested. At that time, Blanton's counsel renewed the motion for acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

---

[2] Although a civil protection order was eventually served to William, no order was served prior to the date of his arrest. The meeting between Chestnut and Blanton occurred before the arrest date, therefore no civil protection order was effective at that point.

**{¶25}** Prior to closing arguments, Blanton's counsel objected to the jury instructions in the case. Specifically, counsel argued that the jury should be instructed that an essential element of obstructing justice, where the basis is harboring or concealing, is that the defendant's actions "in fact hindered or reasonably could have said to have hindered the discovery, prosecution, conviction or punishment or apprehension of [a potential felon.]" Oct. 29, 2014 Trial Tr., p. 3. In addition, counsel argued that the jury should be instructed that an oral misstatement is not punishable conduct under the law. The trial court overruled these objections.

**{¶26}** After deliberating, the jury returned with a verdict of guilty as to the sole charge of obstructing justice. They further found that the crime committed by William was a felony. The trial court issued an entry on January 16, 2015, sentencing Blanton to a period of 18 months of community control.

**{¶27}** Blanton filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANT-APPELLANT'S CONVICTION FOR OBSTRUCTING JUSTICE IN VIOLATION OF R.C. 2921.32(A)(1).**

*Assignment of Error No. II*

**DEFENDANT-APPELLANT'S CONVICTION FOR OBSTRUCTING JUSTICE IN VIOLATION OF R.C.**

**2921.32(A)(1) IS CONTRARY TO THE MANIFEST WEIGHT OF EVIDENCE.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY PERMITTING THE STATE TO ASK IMPROPER QUESTIONS DURING VOIRE [SIC] DIRE.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY REFUSING TO INSTRUCT THE JURY REGARDING THE ELEMENTS OF THE OFFENSE AS PROPOSED BY DEFENDANT-APPELLANT.**

*Assignment of Error No. I*

{¶28} In her first assignment of error, Blanton argues that the trial court erred by entering a verdict that was not supported by sufficient evidence. Specifically, Blanton argues that that State failed to present evidence as to the degree of culpability requirement. Further, she argues that the State failed to present evidence that her conduct consisted of anything more than an unsworn oral misstatement. Finally, Blanton argues that the State failed to present evidence that her actions actually hindered the police. We disagree.

{¶29} When an appellate court reviews the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *State v. Monroe*,

-11-

105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47. Sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, the question of whether the offered evidence is sufficient to sustain a verdict is a question of law. *State v. Wingate*, 9th Dist. Summit No. 26433, 2013-Ohio-2079, ¶ 4.

{¶30} Blanton was charged with one count of obstructing justice under R.C. 2921.32(A)(1). R.C. 2921.32(A)(1) states,

> (A) No person, with purpose to hinder the discovery, apprehension, conviction, or punishment of another for crime * * * shall do any of the following:
>
> (1) Harbor or conceal the other person * * *[.]

"A person acts purposely when it is the person's specific intention to cause a certain result * * *." R.C. 2901.22(A). Additionally, " 'Intent lies within the privacy of an individual's own thoughts and is not susceptible of objective proof.' " *State v. Davis*, 3d Dist. Marion No. 9-06-56, 2007-Ohio-4741, ¶ 33, quoting *State v. Harris*, 6th Dist. Erie No. E-04-34, 2006-Ohio-1396, ¶ 48, citing *State v. Garner*, 74 Ohio St.3d 49, 60 (1995). As a result, intent can be proven by the surrounding facts and circumstances of the case. *Id.*

{¶31} "Harboring" is defined as "[t]he act of affording lodging, shelter, or refuge to a person, esp. a criminal or illegal alien." *Black's Law Dictionary* 831 (10th Ed.2014). Other courts have found that "[h]arboring or concealing requires

-12-

an overt act that does in fact hinder the discovery or apprehension of the person sought by the police." *State v. Blackson*, 9th Dist. Summit No. 17971, 1997 WL 89218, *2 (Feb. 26, 1997), citing *State v. Connor*, 81 Ohio App.3d 829, 832 (9th Dist.1992); *see also State v. Cooper*, 11th Dist. Ashtabula No. 2005-A-0025, 2006-Ohio-869, ¶ 24; *State v. Davis*, 10th Dist. Franklin No. 99AP-1428, 2000 WL 1455680, *6 (Sep. 28, 2000). Finally,

> The gist of [obstructing justice] is not the hindering of the police but, rather, harboring or concealing another with a purpose to hinder his apprehension or discovery. It is the act of harboring or concealing with the purpose of hindering his discovery or apprehension that constitutes the crime. It is not necessary that harboring or concealing be sufficiently successful to prevent the discovery or apprehension of the suspect for any prolonged period of time.

*State v. Claybrook*, 57 Ohio App.2d 131, 135 (10th Dist.1978).

{¶32} Blanton argues that oral misstatements are not punishable conduct under R.C. 2921.32(A)(1). In contrast, the State argues that Blanton's statements constituted lies, which were intended to hinder the police and the apprehension of William, and are punishable conduct under R.C. 2921.32(A)(1). Blanton argues that since the State relied solely upon Blanton's statements to Officer Musser, the State failed to present sufficient evidence to support a conviction. Both parties miss the point. Blanton has not been charged under R.C. 2921.32(A)(5) with making false statements and thereby hindering the discovery or apprehension of William. Rather, she was charged with harboring or concealing William pursuant to R.C. 2921.32(A)(1), which has no prerequisite of misstatements or false

statements. The evidence demonstrates that William was in her residence and being afforded with "lodging, shelter, or refuge," in other words, she was physically harboring William. The misstatements or false statements are simply further evidence of her intent to conceal William's whereabouts, and hinder or delay his apprehension. It is her intent, or purpose, that is at issue, not the content of her false statements. Given that this case involved the physical harboring of an individual, it would be improper for us to decide the issue of whether oral misstatements are punishable under R.C. 2921.32(A)(1). *Compare State v. Hough*, 48 Ohio App.2d 304, 310 (1st Dist.1976) (finding that oral statements can constitute harboring or concealing absent the defendant physically harboring the individual sought by authorities).

{¶33} Although other courts have found that harboring or concealing requires some actual hindrance, which resulted from the defendant's conduct, we decline to adopt this requirement. Rather, we find that the true heart of obstructing justice pursuant to 2921.32(A)(1) is the defendant's intent to hinder the apprehension or discovery, etc. of a person believed to have committed a crime. *See Claybrook*, 57 Ohio App.2d at 135 (A requested jury instruction, which the jury must find the defendant not guilty if the police were not hindered by the defendant's conduct, would have confused the jury.). Noticeably, any requirement that a defendant's conduct hinder the police is absent from the statutory language of R.C. 2921.32. Contrast this statute with R.C. 2921.31(A), which explicitly

requires that a defendant's conduct either "hamper[] or impede[] a public official in the performance of the public official's lawful duties."

{¶34} Recently, this court expressed its refusal to read into a statute an element that was not present. *State v. Faber*, 3d Dist. Seneca No. 13-15-01, 2015-Ohio-3720, ¶ 36 (finding that R.C. 2921.31 does not require that police officers give a command – either audibly or visibly). Similar to our reasoning in *Faber*, the language of R.C. 2921.32 does not require that the defendant's conduct actually hinder the apprehension or discovery of the harbored individual, and, therefore, the State was not required to prove any actual hindrance.

{¶35} Considering whether the State presented sufficient evidence to convict Blanton of obstructing justice, we review the following testimony. At trial, Detective Musser testified that he went to 767 W. Center Street in Marion, Ohio to arrest William. Peterson and Kagel testified that at the time of the arrest, William had a pending charge of felony domestic violence. After looking around the outside of the house, Officer Musser explained that he encountered Blanton who had just exited from the back door. Detective Musser informed Blanton of why they were there and asked her if William was in the house, and she said no. He next asked her if she knew where William was, and Blanton said somewhere on a nearby street. She also told Officer Musser that she was alone in the house. Officer Musser testified that he warned Blanton that she could be charged with

obstructing justice if she was lying and she indicated that she understood. He added that she did not allow them into the house when he asked.

{¶36} During Officer Musser's conversation with Blanton, Officer Kindell testified that he observed a male figure inside the house that matched William's description. Further, he stated that he observed Blanton walk right past William and witnessed the two engage in a brief conversation upon her return to the house. Officer Kindell concluded that he relayed this information to Lieutenant Bayles. The police breached the home, found William, and arrested him.

{¶37} Testimony was elicited from Chestnut, Blanton's advocate in William's domestic violence case, which suggested Blanton did not want William to get arrested and lose his job. Moreover, Chestnut indicated that Blanton wanted William to turn himself in to the police. Chestnut testified that the two discussed the best way for William to address the situation without getting into more trouble. This was seemingly confirmed by both Witzell, who was at this meeting, and Rischel, who testified that Blanton had set up an appointment with an attorney to discuss bringing William into the police station.

{¶38} Upon review of the record, we find that any rational trier of fact could have found that Blanton was guilty of obstructing justice beyond a reasonable doubt. William was charged with domestic violence, a felony. Blanton knew about the crime as she was the victim of the domestic violence charge. Additionally, she spoke with Chestnut about the charge and how William

could take care of it. Blanton clearly knew that police would be looking for William since she was looking for a way in which to bring him in on his own terms. Further, she told Officer Musser that William was not in the house, stated that he was somewhere on a neighboring street, and that she was alone. Nothing Blanton told Officer Musser was the truth.

{¶39} Additionally, although Blanton argues that her intent was always to help facilitate William's surrender, her actions seem to draw the opposite conclusion. She argues that she lied to police because she wanted William to be able to turn himself in the following morning with the hope that he would not lose his job. By doing so, she deliberately attempted to delay William's apprehension until a later time. Thus, her argument has no merit. Since the State can prove intent via the surrounding facts and circumstances, we find that any rational trier of fact could have found that Blanton possessed the requisite degree of culpability.

{¶40} Finally, Blanton argues that the evidence was insufficient to show some form of hindrance. As stated supra, the State was not required to prove that the police officers were actually hindered by Blanton's actions.

{¶41} After viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of obstructing justice beyond a reasonable doubt.

{¶42} Accordingly, we overrule Blanton's first assignment of error.

*Assignment of Error No. II*

{¶43} In her second assignment of error, Blanton argues that her conviction for obstructing justice is against the manifest weight of the evidence. We disagree.

{¶44} When an appellate court analyzes a conviction under the manifest weight standard, it "sits as the thirteenth juror." *Thompkins*, 78 Ohio St.3d at 387. Accordingly, it must review the entire record, weigh all of the evidence and its reasonable inferences, consider the credibility of the witnesses, and determine whether the fact finder "clearly lost its way" in resolving evidentiary conflicts and "created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). When applying the manifest weight standard, a reviewing court should only reverse a trial court's judgment "in exceptional case[s]" when the evidence "weighs heavily against the conviction." *Id*. at paragraph three of the syllabus.

{¶45} Having disposed of Blanton's sufficiency arguments, we similarly reject her manifest weight arguments. Blanton makes the same arguments as to her manifest weight claim that she made regarding her sufficiency claim. We have already found that the State presented sufficient evidence to support a conviction. Further, the jury heard the testimony of several individuals involved in the case. Blanton has failed to point to any error on behalf of the jury other than its ultimate

decision. "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. After a thorough review of the record, we cannot say that this is the exceptional case where the trier of fact lost its way and committed a miscarriage of justice by finding Blanton guilty of obstructing justice.

{¶46} Accordingly, we overrule Blanton's second assignment of error.

*Assignment of Error No. III*

{¶47} In her third assignment of error, Blanton argues that she suffered prejudice as a result of the trial court's decision to allow the State to ask improper questions during voir dire. We disagree.

{¶48} We initially note that Blanton has failed to cite any legal authorities to support her third assignment of error. This violates App.R. 16(A)(7), which requires that the appellant provide "[a]n argument containing [her] contention * * * with citations to the authorities * * * on which appellant relies." Although App.R. 12(A)(2) gives us the authority to disregard this assignment of error, we elect to address it in the interests of justice. *See State v. Thomas*, 3d Dist. Mercer No. 10-10-17, 2011-Ohio-4337, ¶ 25.

{¶49} Blanton essentially argues that the prosecutor committed prosecutorial misconduct during voir dire. Prosecutorial misconduct will only be found if statements made by a prosecutor were improper and if those statements

prejudiced the defendant's substantial rights. *State v. Brady*, 3d Dist. Marion No. 9-03-27, 2003-Ohio-6005, ¶ 6, quoting *State v. Williams*, 10th Dist. Franklin Nos. 02AP-730, 02 AP-731, 2003-Ohio-5204, ¶ 52.

{¶50} Blanton complains that the following statements made by the prosecutor were improper: "Would you generally agree that people who lie to police officers should be prosecuted for that?" Oct. 28, 2014 Trial Tr., p. 23; "Does everybody agree that people who lie to a police officer should be prosecuted for that?  Any—I need a yes or a no.  Generally speaking, okay?  All right.  Does anybody hold the opinion if somebody lies to a police officer, it's just part of the police officer's job, and they have to deal with [sic]?" *Id.* at p. 23-24.

{¶51} Blanton argues that these statements were improper because she was charged under subsection (A)(1), which required the State to prove that she harbored or concealed William, and that oral misstatements are not punishable conduct.  We find that the prosecutor's statements were improper.  By asking the potential jurors whether they believed that all people who lie to police officers should be prosecuted, the prosecutor implied, and the potential jurors could have inferred, that all false statements made to police officers are punishable conduct.  This is not a correct statement of the law, and, therefore, the statements were improper.

{¶52} The next question is whether these statements prejudiced Blanton's substantial rights.  In her brief, Blanton failed to show how she was prejudiced by

the prosecutor's statements. Although it is certainly possible for a defendant in a similar case to be substantially prejudiced, the facts in this case do not rise to such a level of prejudice. Specifically, the jury instructions did not include any statement regarding the criminality of false statements made to police officers. Rather, the jury was instructed to find whether Blanton harbored or concealed William. Because the jury was not instructed that false statements require a conviction, we find that any error in permitting the improper questions during voir dire was harmless in this case.

{¶53} Accordingly, we overrule Blanton's third assignment of error.

*Assignment of Error No. IV*

{¶54} In her fourth assignment of error, Blanton argues that she was prejudiced by the trial court's decision not to instruct the jury according to Blanton's suggested instructions. Specifically, she argues that the jury should have been instructed that the "State had to prove, inter alia, that [Blanton] harbored or concealed William through conduct which went beyond a mere oral misstatement and that she did in fact hinder, or can reasonably be said to have hindered, the discovery, apprehension, prosecution, conviction or punishment of William." (Appellant's Brief at 12). We disagree.

{¶55} "A trial court's instructions to a jury must correctly, clearly, and completely state the law applicable to the case." *State v. Orians*, 179 Ohio App.3d 701, 2008-Ohio-6185, ¶ 10 (3d Dist.), citing *State v. Thomas*, 170 Ohio App.3d

-21-

727, 2007-Ohio-1344, ¶ 15 (2d Dist.). Additionally, when an appellate court reviews jury instructions, it must examine the specific charge at issue in the context of the entire charge, and not in isolation. *State v. Thompson*, 33 Ohio St.3d 1, 13 (1987). Jury instructions fall under a trial court's discretion, which will not be disturbed absent an abuse of discretion. *State v. Guster*, 66 Ohio St.2d 266, 271 (1981). An abuse of discretion connotes that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

> **{¶56}** Here, the trial court's instructions to the jury read, in relevant part,
>
> The offense charged in the indictment is as follows: Count one, obstructing justice, revised code section 2921.32[(A)(1).] The defendant is charged with the offense of obstructing justice in count one of the indictment.
>
> Before you can find the defendant guilty of obstructing justice, you must find beyond a reasonable doubt that on or about the 22nd day of May, 2014 and in Marion County, Ohio the defendant did, A, with purpose to hinder the discovery or apprehension of William Blanton for a crime; B, harbor or conceal William Blanton; and, C, the crime committed by William is a felony.

Oct. 29, 2014 Trial Tr., p. 53-54. These instructions are nearly identical to that of the model jury instructions. *See Ohio Jury Instructions*, CR Section 521.32 (2015). Additionally, we note how the jury could be confused given the instruction that there must actually be hindrance. *See Claybrook*, 57 Ohio App.2d at 135.

{¶57} Because we have found that the State need not prove either of the facts alleged by Blanton, as stated supra, and that the jury instructions were nearly identical to the model instructions, we cannot say that the trial court abused its discretion when it refused to provide the requested jury instruction.

{¶58} Accordingly, we overrule Blanton's fourth assignment of error.

{¶59} Having found no error prejudicial to Blanton, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**SHAW, J., concurs in Judgment Only.**

**/hlo**